The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner. The appealing parties have shown good grounds to reconsider the evidence. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
A Form 21, Agreement for Compensation for Disability, having been approved by the Industrial Commission on June 11, 1992 and two Form 26's, Supplemental Memorandum of Agreement as to Payment of Compensation, having been approved by the Industrial Commission on August 19, 1992 and September 4, 1992 respectively, constitute awards of record, and as such, are incorporated herein by reference.
* * * * * * * * * *
The undersigned find as facts and conclude as matters of law the following, which were entered into by the parties at the hearing and in an executed Pre-Trial Agreement dated October 19, 1993, as
STIPULATIONS
1. The employer-employee relationship existed between the plaintiff and the defendant-employer, Mills Manufacturing Corporation from June 30, 1990 to April 4, 1991.
2. The employer-employee relationship existed between the plaintiff and the defendant-employer, Graham Care Center from approximately July 10, 1991 to approximately August 4, 1992.
3. Mills Manufacturing Corporation is and has been a duly qualified self-insured employer at all relevant times.
4. North Carolina Farm Bureau Insurance Company has been the provider of workers' compensation insurance for the defendant-employer Graham Care Center at all relevant times.
5. The plaintiff's average weekly wage with Mills Manufacturing Corporation was $188.00 per week.
6. The plaintiff's average weekly wage with Graham Care Center was $196.65 per week.
7. A Form 21 stipulating injury to the plaintiff's right wrist as of January 15, 1991 was entered into by the plaintiff and Mills Manufacturing Corporation on or about May 15, 1992. Pursuant to said Form 21 Agreement and subsequent Form 26 Agreements dated July 7, 1992 and August 5, 1992, the plaintiff was paid temporary total disability benefits at the rate of $125.34 for 6 5/7 weeks by Mills Manufacturing Corporation. In addition, Mills Manufacturing Corporation has advanced $1,000.00 against any permanent partial or total disability benefits the plaintiff may receive.
* * * * * * * * * * *
EVIDENTIARY RULING
All objections raised by counsel at the depositions of Drs. Stewart Harley and E. Brown Crosby, are ruled upon in accordance with the applicable provisions of law and the opinion in this Opinion and Award.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a 38 year old right-hand dominant female with a sixth grade education and no special training or vocational skills.
2. Plaintiff's employment history consists of unskilled labor and housekeeper/custodial work, textiles and assembly work in parachute manufacturing.
3. Plaintiff began employment as a "rigger" with Mills Manufacturing in June of 1990.
4. Plaintiff's duties as a "rigger" required her to tie knots in cords used in the manufacture of parachutes. Twenty five knots were required for each parachute. Plaintiff performed this activity 8 hours per day, five days per week. This activity required constant use of both hands and was repetitive in nature.
5. While employed at Mills Manufacturing, plaintiff sought medical treatment from Dr. Mouw for pain, numbness and tingling in her hands and wrist, which symptoms were worse in the right hand and wrist.
6. Plaintiff underwent nerve conduction studies on February 21, 1991, which revealed "mild but definite bilateral and fairly symmetric median nerve slowing at the carpal tunnel level."
7. Plaintiff was laid off permanently by Mills Manufacturing due to general economic conditions on April 4, 1991.
8. On June 25, 1991, plaintiff was seen by Dr. Harley, who treated plaintiff conservatively with injections and splints for continuing right and left carpal tunnel syndrome symptoms.
9. Plaintiff was unemployed from the time she left Mills Manufacturing until she began employment as a housekeeper with Graham Care Center on or about July 10, 1991.
10. Plaintiff's duties as housekeeper required her to clean 12 rooms daily. To clean a room, plaintiff was required to dust, vacuum, sweep, mop, change linens, and clean the restrooms. Plaintiff was required to move her cleaning equipment, which included a commercial mop bucket with wringer, to each of the rooms she cleaned. Plaintiff was required to change the water in the bucket every 4th room. Plaintiff was required to change her "surgical" type rubber gloves each time she went into a new room. This activity required constant use of both hands, including lifting, pushing and pulling. Although plaintiff completed each of the various tasks in one room before moving to the next room, they were repetitive in nature. Additionally, the lifting of the mop bucket and changing of gloves was stressful to plaintiff's hands and wrists.
11. While employed at Graham Care Center, plaintiff continued to receive conservative treatment from Dr. Harley for right and left carpal tunnel syndrome symptoms.
12. On May 1, 1992, plaintiff became unable to earn any wages in any employment, at which time she underwent right carpal tunnel release surgery. The surgery relieved the tingling and numbness in plaintiff's right hand but she continued to experience pain in her right hand and right wrist.
13. On June 15, 1992, Dr. Harley released plaintiff to return to light duty work. At that time, plaintiff returned to her same duties as housekeeper at Graham Care Center earning the same wages she was earning prior to May 1, 1992. Plaintiff's right and left carpal tunnel syndrome symptoms continued.
14. On June 30, 1992, plaintiff was seen by Dr. Crosby, who treated plaintiff conservatively for continuing right and left carpal tunnel syndrome symptoms, right hand and right wrist reflex sympathetic dystrophy and right wrist ganglion cyst.
15. On July 28, 1992, plaintiff left work for a doctors visit and then vacation. Thereafter, plaintiff did not return to work with Graham Care Center. On August 5, 1992, plaintiff was taken out of work by Dr. Crosby due to continuing right and left carpal tunnel syndrome symptoms.
16. Plaintiff has right and left carpal tunnel syndrome.
17. On November 5, 1992, plaintiff reached maximum medical improvement from her right and left carpal tunnel syndrome and as a result thereof sustained a 10% permanent partial impairment to her right hand and a 5% permanent partial impairment to her left hand.
18. On January 5, 1993, plaintiff was released by Dr. Crosby to return to work at a light duty job under restrictions of a 10 pound stress load limit for the use of both hands and no repetitive motion activity. Thereafter, plaintiff did not return to work with Graham Care Center. Plaintiff has not earned any wages at any employment since she left employment at Graham Care Center. Since January 5, 1993, plaintiff has neither sought nor obtained any employment.
19. As a result of her employment with Mills Manufacturing, plaintiff was placed at an increased risk of developing right and left carpal tunnel syndrome as compared to members of the general public not so exposed. The repetitive work required by plaintiff's employment with Mills Manufacturing caused, or was a significant contributing factor in the development of, plaintiff's right and left carpal tunnel syndrome.
20. However, plaintiff's duties as housekeeper at Graham Care Center from July 10, 1991 to August 5, 1992, which were also repetitive in nature and increased the stress in her hands and wrists, exposed her to the hazards of right and left carpal tunnel syndrome which, at least by the end of her employment with defendant Graham Care Center, had proximately augmented her right and left carpal tunnel syndrome and thus constituted plaintiff's last injurious exposure to her disease.
21. Plaintiff has a ganglion cyst in the dorsum of her right wrist which developed while she was employed at Graham Care Center.
22. The credible and convincing evidence of record fails to establish that plaintiff's ganglion cyst is related to her right and left carpal tunnel syndrome, is the result of an interruption of her normal work routine in her employment with Graham Care Center which was likely to result in unexpected consequences; or that her employment with Graham Care Center placed her at an increased risk of developing, caused her to develop or was a significant contributing factor in the development of, her ganglion cyst.
23. As a result of her right and left carpal tunnel syndrome, plaintiff is unable to return to work as a housekeeper with Graham Care Center.
24. Due to the physical limitations resulting from her right and left carpal tunnel syndrome and her preexisting vocational limitations, it would be futile for plaintiff to look for employment absent vocational assistance, vocational training, or both.
25. The credible and convincing evidence of record fails to establish that there are suitable jobs available which plaintiff is capable of obtaining taking into account her physical and vocational limitations.
26. As a result of her right carpal tunnel syndrome, plaintiff was incapacitated and unable to earn any wages in any employment from May 1, 1992 to June 15, 1992, on June 30, 1992 and July 28, 1992; and as result of her right and left carpal tunnel syndrome was incapacitated and unable to earn any wages in any employment from August 5, 1992 to the present. The credible and convincing evidence of record fails to establish what portion of plaintiff's wage earning incapacity subsequent to August 5, 1992 is attributable to her right carpal tunnel syndrome or her left carpal tunnel syndrome.
27. As a result of her right and left carpal tunnel syndrome, plaintiff has continuing right and left carpal tunnel syndrome symptoms, clinical depression and signs of right hand reflex sympathetic dystrophy, which reasonably require future medical care and treatment in order to effect a cure, give relief or lessen her incapacity to earn wages.
28. Defendant Mills Manufacturing entered into Form Agreements on May 13, 1992, July 7, 1992 and August 5, 1992, which were approved thereafter by the Industrial Commission, accepting liability for plaintiff's right carpal tunnel syndrome and whereby they paid plaintiff for loss of wage earning capacity from May 1, 1992 to June 15, 1992, on June 30, 1992 and on July 28, 1992, which last date was plaintiff's last day of work at Graham Care Center.
29. At the time, both plaintiff and defendant Mills Manufacturing were acting under the mistaken belief that last injurious exposure occurred while plaintiff was working for Mills Manufacturing. It has now come to light following the expert medical testimony that, in fact, plaintiff suffered further and last augmentation of her left and right carpal tunnel syndrome as a result of her employment with Graham Care Center.
30. Accordingly, the Form 21 Agreement for Compensation for Disability, entered into between plaintiff and Mills Manufacturing on May 13, 1992, and the subsequent Form 26 Agreements entered into between plaintiff and defendant Mills Manufacturing on July 7, 1992, and August 5, 1992, respectively, were entered into in error due to mutual mistake of fact.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission find as follows:
CONCLUSIONS OF LAW
1. Inasmuch as the Form 21, Agreement for Compensation for Disability, and the two subsequent Form 26's, Supplemental Memorandum of Agreement as to Payment of Compensation for Disability, were entered into between plaintiff and defendant Mills Manufacturing in error due to mutual mistake, they are accordingly SET ASIDE. G.S. 97-17;
2. As a result of her employment with defendant Mills Manufacturing, plaintiff developed right and left carpal tunnel syndrome which is due to causes and conditions characteristic of and peculiar to her employment with defendant Mills Manufacturing and which is not an ordinary disease of life to which the general public is equally exposed outside of the employment. Plaintiff, accordingly, has contracted an occupational disease. G.S.97-53(13); Booker v. Duke Medical Center, 297 N.C. 458 (1979).
3. However, plaintiff was last injuriously exposed to the hazards of right and left carpal tunnel syndrome while employed at defendant Graham Care Center, which last injurious exposure had occurred at least by the time plaintiff last worked at that employment, July 28, 1992 and which proximately augmented her right and left carpal tunnel syndrome. G.S. 97-57; See Barber v.Babcock and Wilcox Construction Co., 101 N.C. App. 564,400 S.E.2d 735 (1991) and Caulder v. Waverly Mills, 314 N.C. 70,331 S.E.2d 646 (1985). Thus defendant Graham Care Center is responsible for all consequences associated therewith. G.S. 97-57.
4. Plaintiff's average weekly wage with Graham Care Center, was $196.65 per week, yielding a compensation rate of $131.10 per week. As a result of her right carpal tunnel syndrome, plaintiff was temporarily totally disabled from May 1, 1992, to June 15, 1992, on June 30, 1992, and July 28, 1992; and as a result of her right and left carpal tunnel syndrome, was temporarily totally disabled from August 5, 1992 to the present and continuing, for which she is entitled to compensation from defendant Graham Care Center at the rate of $131.10 per week for the aforementioned periods and continuing for so long as so disabled, subject to a credit for any disability paid heretofore. G.S. 97-29; G.S.97-52.
5. As a result of her right and left carpal tunnel syndrome, plaintiff sustained a 10% permanent partial impairment to her right hand and a 5% permanent partial impairment to her left hand entitling her to 30 weeks of compensation. However, inasmuch as plaintiff has sustained total disability for a period of time greater than 30 weeks since reaching maximum medical improvement and being released to return to work, it is reasonable to infer that plaintiff would elect the more favorable remedy of continuing temporary total disability and consequently is entitled to no payment for permanent partial impairment. G.S. 97-29; G.S.97-31(12); See Whitley v. Columbia Lumber Manufacturing Corp.,318 N.C. 89 (1986).
6. As a result of her right carpal tunnel syndrome and left carpal tunnel syndrome, plaintiff is entitled to have paid by defendant Graham Care Center all medical expenses incurred or to be incurred, which are reasonably required to effect a cure, give relief or lessen the disability from her right and left carpal tunnel syndrome. G.S. 97-59; Hyler v. GTE Products Corp.,333 N.C. 258, 425 S.E.2d 698 (1993).
* * * * * * * * * * *
The foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. Defendant Graham Care Center shall pay plaintiff, on account of her temporary total disability, compensation at the rate of $131.10 per week from May 1, 1992 to June 15, 1992, June 30, 1992 and July 28, 1992, and from August 5, 1992 to the present and continuing, subject to a credit for any disability compensation paid heretofore. As much of said compensation as has accrued shall be paid in a lump sum subject to a reasonable attorney's fee hereinafter approved.
2. A reasonable attorney's fee in the amount of 25% of the compensation benefits due under the above award is hereby approved for plaintiff's attorney, Mr. Richard Harper. Said attorney's fee shall be paid out of the accrued benefits and out of the benefits that will hereafter accrue by defendants making direct payment to plaintiff's counsel of every fourth week of compensation payable under the terms of this Opinion and Award.
3. Defendant Graham Care Center shall pay all medical expenses incurred, or to be incurred, as a result of plaintiff's right carpal tunnel syndrome and left carpal tunnel syndrome from July 28, 1992 and thereafter, to the extent that the same are reasonably required to effect a cure, give relief, or lessen the period of disability from the occupational disease of right and left carpal tunnel syndrome giving rise hereto, when bills for the same have been submitted through the carrier to the Industrial Commission and thereafter approved by the Industrial Commission.
4. Defendant Graham Care Center and North Carolina Farm Bureau Mutual Insurance Company shall pay all costs, including the previously authorized expert witness fee of $300.00 to Dr. Stewart Harley and an expert witness fee in the amount of $300.00 to Dr. E. Brown Crosby.
5. Plaintiff's request for payment pending appeal, pursuant to G.S. 97-86.1, is duly noted, and plaintiff should renew the request before the Full Commission for an order immediately should further appeal take place.
This the __________ day of _____________________, 1995.
 S/ _____________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _____________________________ J. RANDOLPH WARD COMMISSIONER
S/ _____________________________ GREGORY M. WILLIS DEPUTY COMMISSIONER
JHB/nwm