The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing, and following, and in a Pre-Trial Agreement admitted into evidence as Stipulated Exhibit #1, as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff-employee and defendant-employer. Plaintiff was employed by defendant Chesebrough Ponds (hereinafter referred to as Chesebrough) from February, 1982 to 13 August 1993. Plaintiff was employed by defendant Clayson Knitting (hereinafter referred to as Clayson) from 17 July 1995 to 16 August 1995. Plaintiff was employed by defendant Food Lion from 21 June 1995 to mid-July, 1995. Plaintiff was employed by defendant Ellis Johnson Middle School (hereinafter referred to as Johnson School) from 18 August 1995 to the date of hearing.
3. Defendant Chesebrough is self-insured with Alexsis, Inc., as the adjusting agency. Sedgwick of the Carolinas is the worker's compensation insurance carrier for defendant Clayson. Defendant Food Lion is self-insured with Alexsis, Inc., as the adjusting agency. Johnson School/Scotland County Board of Education is self-insured through North Carolina School Boards Insurance Trust with Educator Benefit Services as the servicing agency.
4. The average weekly wage shall be determined by Industrial Commission Form 22s.
5. Plaintiff's medicals with regard to this claim are admitted into evidence as Stipulated Exhibit #2.
6. Plaintiff's answers to defendant Chesebrough's Request for Production and Interrogatories are admitted as Stipulated Exhibit #3.
7. An Industrial Commission Form 22 from defendant Clayson is admitted into evidence as Stipulated Exhibit #4.
8. The Commission takes Judicial Notice of the Industrial Commission forms which are a part of plaintiff's claim.
9. It was further stipulated following the hearing that Dr. Paul F. Rush, plaintiff's treating physician, serves on the Scotland County Board of Education.
 *********** RULINGS ON EVIDENTIARY MATTERS
The objections contained within the deposition of Dr. Paul F. Rush are ruled upon in accordance with the applicable provisions of the law and the Opinion and Award in this case.
 ***********
Based upon all of the competent evidence adduced in this case and reasonable inferences drawn therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of hearing, plaintiff was a 38 year old female who had been employed by the defendant-employers during the stipulated dates.
2. Plaintiff worked as a packing assembly worker at defendant Chesebrough. Defendant Chesebrough is engaged in the manufacture of health/hygiene products such as shampoo and deodorants. Plaintiff screwed and unscrewed the caps of the products such as stick deodorants, as well as placed items in trays. Although Chesebrough had a machine which assisted in screwing on these caps, the machine broke down frequently.
3. Plaintiff's job at Chesebrough was the only production job she ever performed. Her duties required her to press down on the deodorant lid with her palm and rotate the lid to make sure the product was tightly closed.
4. Defendant Chesebrough rotated employees' duties around the production lines, but plaintiff essentially performed the same twisting and pressing motions with her hands and wrists. The products came down an assembly line and plaintiff was able to sit or stand as needed.
5. During plaintiff's employment with defendant Chesebrough she began to have pain and swelling in her hands and wrists. The pain was greater any time plaintiff pressed on the lid of a product. Plaintiff's symptoms were also worse at night.
6. Plaintiff's hours were from 8:00 a.m. to 4:00 p.m. Plaintiff received a thirty (30) minute lunch break and two ten (10) minute breaks. Plaintiff is right handed and used her right hand more in the performance of her duties, but at times the right hand pain forced plaintiff to use her left hand to screw and unscrew the product lids. Plaintiff's job was repetitive in nature and was a production job. This job placed her at greater risk for a work-related disorder, carpel tunnel disease and right median neuropathy, than members of the public generally. Plaintiff's job at Chesebrough was a significant contributing factor and played a significant causal role in the development of her right median neuropathy and carpal tunnel syndrome.
7. Plaintiff did not report any problems with her hands while employed at defendant Chesebrough. The reason plaintiff failed to report her hand and wrist pain is she did not make any association between her job and her pain until she treated with Dr. Sabella in October, 1993 and was diagnosed with carpal tunnel syndrome. At that time plaintiff no longer worked for defendant Chesebrough. Although defendant Chesebrough had specific policies in place regarding employees' report of injuries and accidents, there was no specific policy setting out how a former employee reports injuries and accidents.
8. Plaintiff filed an Industrial Commission Form 18 naming defendant Chesebrough as the employer-defendant on 16 August 1994, received by the Commission 18 August 1994. The Form 18 was defendant Chesebrough's first notice of plaintiff's occupational injury claim. This Form 18 was timely filed under the circumstances and defendant Chesebrough was not prejudiced by the timing of its filing.
9. Plaintiff's last day of work for defendant Chesebrough was 13 August 1993. In August, 1993 plaintiff began work for ARA Food Service at the Ellis Johnson Middle School in the cafeteria. Although plaintiff performed the same job duties, she did not become an employee for defendant Johnson School until August, 1995. ARA Food Service is not a party in this action.
10. In October, 1993 plaintiff sustained injuries to her back and leg as the result of a motor vehicle accident. Plaintiff did not sustain any injuries to her hands at that time. As a result of this accident, plaintiff sought treatment from Dr. Sabella, a chiropractor.
11. Dr. Sabella diagnosed plaintiff with back and shoulder strain as a result of her car accident, but could not relate plaintiff's hand pain to the accident.
12. In August, 1995, plaintiff officially became employed with Johnson School in the cafeteria as a food service assistant. Plaintiff's duties consisted of preparing the vegetables, making sandwiches, making bread, using the deep fryer, backing up the service line and cleaning up the serving line, cooking utensils and varied other duties. Plaintiff's duties vary during the day and are rotated from day to day as well. This was not a production job and did not involve the same repetitive movements. This job did not augment the disease process to any extent.
13. In November, 1995, plaintiff sought treatment from Dr. Harvel, an orthopaedist, for her hands. Plaintiff had a positive Tinel's sign, a positive Phalen's sign and an EMG revealed mild carpal tunnel syndrome in the right extremity.
14. Plaintiff worked for defendant Food Lion during her 1995 summer break from school. Her duties at Food Lion consisted of slicing meats, making sandwiches and waiting on customers. Plaintiff's hand problems did not increase during the less than one month she worked at Food Lion. This was not a production job and the varied duties did not involve the same repetitive movements. This job did not augment the disease process to any extent.
15. Plaintiff left Food Lion in mid-July, 1995 and began work at defendant Clayson on 17 July 1995. Plaintiff worked as a boarder at defendant Clayson. This job consisted of sliding socks over a frame. Plaintiff only worked thirteen (13) days of her eight (8) week training course, so she never achieved production level. This job did not augment the disease process to any extent.
16. Plaintiff sought treatment from Dr. Rush on 17 February 1997. At that time plaintiff's symptoms included pain in the palm of the right hand and numbness, particularly in completing fine motor tasks. Dr. Rush injected plaintiff with Cortisone to provide some relief from her swelling and nerve compression.
17. Plaintiff's symptoms improved with the treatment of Cortisone injection. Dr. Rush did not recommend surgery at that time.
18. Plaintiff has not reached maximum medical improvement and has not received any permanent disability rating.
19. Plaintiff's job duties at defendant Johnson School did not augment the disease process to any extent.
20. Plaintiff's average weekly wage at defendant Chesebrough was $244.16, resulting in a compensation rate of $162.78.
21. While in the employ of defendant Chesebrough plaintiff contracted the occupational diseases right median neuropathy and carpal tunnel syndrome.
 ***********
Based upon the foregoing findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff's employment with defendant Johnson School was not her last injurious exposure to factors causing the occupational disease carpal tunnel syndrome because her work there did not augment the disease process to any extent.Caulder v. Waverly Mills, 314 N.C. 70, 331 S.E.2d 646
(1985); Neal v. Leslie Fay, Inc., 78 N.C. App. 117,336 S.E.2d 628 (1985).
2. Plaintiff's employment with defendant Food Lion did not augment the disease process to any extent and thus was not her last injurious exposure.
3. Plaintiff's employment with defendant Clayson did not augment the disease process to any extent and thus was not her last injurious exposure.
4. Plaintiff's employment with defendant Ellis Johnson Middle School did not augment the disease process to any extent and thus was not her last injurious exposure.
5. Plaintiff's repetitive, production job at Chesebrough placed her at greater risk for a work-related disorder, carpel tunnel disease and right median neuropathy, than members of the public generally. Plaintiff's job at Chesebrough was a significant contributing factor and played a significant causal role in the development of her right median neuropathy and carpal tunnel syndrome. Plaintiff has sustained her burden of proving that she suffers from an occupational disease and that Chesebrough is the employer responsible for her disability.Hilliard v. Apex Cabinet Co., 305 N.C. 593,290 S.E.2d 672 (1992).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 ORDER
1. Defendant Food Lion is HEREBY DISMISSED as a party defendant.
2. Defendant Clayson is HEREBY DISMISSED as a party defendant.
3. Defendant Johnson School is HEREBY DISMISSED as a party defendant.
4. Defendant Chesebrough shall pay all medical expenses incurred by plaintiff as a result of her compensable occupational disease, including further treatment and evaluations from Dr. Paul Rush.
5. This case shall remain open for determination of maximum medical improvement and permanent partial disability rating, if any.
6. Defendant Chesebrough shall pay the costs.
This 18th day of February 1999.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/_____________ BERNADINE S. BALLANCE COMMISSIONER
DISSENTING:
S/_____________ DIANNE C. SELLERS COMMISSIONER