CLIFTON D. CAULDER, EMPLOYEE-PLAINTIFF v. WAVERLY MILLS, EMPLOYER-DEFENDANT, AND EMPLOYERS MUTUAL INSURANCE COMPANY, CAR-RIER-DEFENDANTS

No. 258PA84

(Filed 3 July 1985)

1. **Master and Servant § 68— hazard of occupational disease—nature of substance —concentration in workplace**

    For a substance to be a "hazard" of an occupational disease within the meaning of G.S. 97-57, it must be a substance peculiar to the workplace; that is, the substance is one to which the worker has a greater exposure on the job than does the public generally, either because of the nature of the substance itself or because the concentrations of the substance in the workplace are greater than concentrations to which the public generally is exposed. G.S. 97-29, G.S. 97-30.

2. **Master and Servant § 68— last injurious exposure—substance which aggravates but does not cause occupational disease**

    The evidence was sufficient to permit the Industrial Commission to find that plaintiff's last injurious exposure to the hazards of his lung disease occurred while employed by Waverly Mills even though he was exposed only to synthetic fibers during that period, and the Commission's finding that dust from synthetic fibers is not known to cause chronic obstructive lung disease did not preclude a conclusion that exposure to it constituted a last injurious

exposure to the hazards of the disease. All the evidence in the record shows that plaintiff's incapacity for work occurred only after he had worked for thirteen years for Waverly Mills in very dusty conditions; plaintiff had no incapacity for work when he began and was totally incapacitated when he quit; and there was medical testimony that the dusty conditions at Waverly Mills, including dust from synthetic fibers, could cause the worsening of plaintiff's lung disease.

Justice MEYER dissenting.

Chief Justice BRANCH joins in the dissent.

ON defendants Waverly Mills and Employers Mutual Insurance Company's petition for further review of a decision of the North Carolina Court of Appeals, 67 N.C. App. 739, 314 S.E. 2d 4 (1984), affirming an Industrial Commission's award against them.

*Charles R. Hassell, Jr. for plaintiff appellee.*

*Hedrick, Eatman, Gardner, Feerick & Kincheloe by J. A. Gardner, III for defendant appellants.*

EXUM, Justice.

The employee-plaintiff, Clifton Caulder, was a textile worker his entire working life, the last thirteen years of which he was employed by defendant Waverly Mills. His claim is for workers' compensation for incapacity to work caused by chronic obstructive lung disease. Concluding that Caulder's lung disease was occupational and compensable and that he was last injuriously exposed to the hazards of the disease while working for Waverly Mills and while Employers Mutual Insurance Company was on the risk, the Industrial Commission awarded Caulder compensation for total disability against defendants. The Court of Appeals affirmed and we allowed defendants' petition for further review of its decision.

Defendants do not challenge the Commission's findings or conclusions that Caulder suffers from chronic obstructive lung disease, the disease is occupational under N.C.G.S. § 97-53(13), and the disease has resulted in Caulder's total incapacity to work. Defendants challenge only those aspects of the Commission's award leading to its determination that Caulder was last injuriously exposed to the hazards of his disease while employed by Waverly Mills and that Employers Mutual was the carrier on the

Caulder v. Waverly Mills

risk when Caulder was so last exposed. Defendants contend that the Commission's findings leading to such determinations are not supported by the evidence and that the findings themselves preclude as a matter of law these challenged determinations.

The evidence and the Commission's findings are, in essence, that although Caulder was exposed to cotton dust when he worked for employers other than Waverly Mills from 1945 until 1967, he was exposed to almost no cotton dust during his employment with Waverly Mills from 1967 until 1980. Almost all of his exposure to dust during his employment with Waverly Mills was to the dust from synthetic fibers. Caulder was exposed exclusively to dust from synthetic fibers during the period when Employers Mutual was the compensation carrier on the risk from 1 July 1979 through February 1980. Inhalation of dust from synthetic fibers is not known to cause chronic obstructive lung disease.

Caulder's evidence is that although dust from synthetic fibers is not known to cause chronic obstructive lung disease, it can make such a disease already in progress worse and, in Caulder's case, did make it worse. The narrow legal question before us, therefore, is whether exposure to a substance which is not known to cause an occupational disease may nevertheless be a last injurious exposure to the hazards of such disease under N.C.G.S. § 97-57 if it makes the disease, already in progress, worse. The statute provides:

> Employer liable. — In any case where compensation is payable for an occupational disease, the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was so last exposed under such employer, shall be liable.

Two of our cases, *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983), and *Haynes v. Feldspar Producing Co.*, 222 N.C. 163, 22 S.E. 2d 275 (1942), make it clear that exposures to substances which can cause an occupational disease can be a last injurious exposure to the hazards of such disease under N.C.G.S. § 97-57 even if the exposure in question is so slight quantitatively that it could not in itself have produced the disease.

*Haynes* was a silicosis case in which the employee-plaintiff had worked in North Carolina feldspar mines for twenty-eight years. From 1927 to 1940 he worked for Tennessee Mineral Corporation where the "silica dust" in the mine "was pretty bad, and plaintiff was exposed to it constantly." 222 N.C. at 164, 22 S.E. 2d at 275. Plaintiff began working for defendant Feldspar Producing Company on 24 September 1940 until he quit on 24 January 1941 after having been diagnosed as having silicosis. Plaintiff testified he had had symptoms of the disease while he worked for Tennessee Mineral Corporation. Indeed, plaintiff's physician testified that in November 1937 plaintiff "had early silicosis, commonly referred to as silicosis one, without symptoms." 222 N.C. at 167, 22 S.E. 2d at 277. By November 1940 plaintiff had "moderately advanced silicosis with probable infection." *Id.* After it was explained to him that the expression "last injuriously exposed" as used in the statute "meant an exposure which proximately augmented the disease to any extent, however slight," plaintiff's physician testified in response to a hypothetical question: "You haven't left me much leeway. I have an opinion that it did constitute an injurious exposure." *Id.* The physician said he had examined plaintiff on 25 October 1938 "and found that he had silicosis one. On November 28, 1940, I examined him and found that he had moderately advanced silicosis with probable infection." *Id.* Plaintiff's physician also testified that he couldn't say whether plaintiff's silicosis had advanced at all after he had entered defendant's employment and that he couldn't say "that he is a bit worse off, not even 1% worse off, than he was on September 24, 1940. I can't say that he is 1% worse off or 1% better off." 222 N.C. at 168, 22 S.E. 2d at 277.

The Commission, after finding that plaintiff was last injuriously exposed at Feldspar Producing Company, made a compensation award against that company. This Court affirmed against defendants' contention that there was no evidence to support the award. The Court said, in essence, that when the evidence was considered in the light most favorable to plaintiff, both the affirmative answer of the physician to the hypothetical question and the physician's testimony on direct examination that plaintiff's disease had "advanced" from the time the physician examined him on 24 October 1938 until he next examined him on 28

November 1940 after he went to work for Feldspar was enough to support the award against Feldspar. The Court said:

> Perhaps on a comparative basis, the chief responsibility for plaintiff's condition morally rests upon his Tennessee employers; but not the legal liability. It must have been fully understood by those who wrote the law fixing the responsibility on the employer in whose service the last injurious exposure took place, that situations like this must inevitably arise, *but the law makes no provision for a partnership in responsibility, has nothing to say as to the length of the later employment or the degree of injury which the deleterious exposure must inflict to merit compensation. It takes the breakdown practically where it occurs—with the last injurious exposure.*

222 N.C. at 170, 22 S.E. 2d at 279 (emphasis supplied).

In *Rutledge v. Tultex Corp.*, 308 N.C. at 89, 301 S.E. 2d at 362-63 (1983), we said:

> Under this statute, consequently, it is not necessary that claimant show that the conditions of her employment with defendant caused or significantly contributed to her occupational disease. She need only show: (1) that she has a compensable occupational disease and (2) that she was 'last injuriously exposed to the hazards of such disease' in defendant's employment. The statutory terms 'last injuriously exposed' mean 'an exposure which proximately augmented the disease to any extent, however slight.' *Haynes v. Feldspar Producing Company*, 222 N.C. 163, 166, 169, 22 S.E. 2d 275, 277, 278 (1942).

[1] By the phrase "hazards of the disease," as used in N.C.G.S. § 97-57, we are satisfied that the legislature intended to include more than substances which are capable in themselves of producing an occupational disease. The term "hazard" should be given its common and ordinary meaning, since nothing indicates the legislature intended it to have some other meaning and it has not acquired some technical meaning. "[W]here the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning unless a different meaning is apparent or indicated by the context." *Pelham*

*Realty Corp. v. Board of Transportation of North Carolina,* 303 N.C. 424, 434, 279 S.E. 2d 826, 832 (1981); *accord State v. Koberlein,* 309 N.C. 601, 605, 308 S.E. 2d 442, 445 (1983). "Hazard" is defined by *Webster's Third New International Dictionary* 1041 (1976) as "a thing or condition that might operate against success or safety: a possible source of peril, danger, duress, or difficulty . . . a condition that tends to create or increase the possibility of loss."

An occupational disease does not become compensable under N.C.G.S. §§ 97-29 (total incapacity) or 97-30 (partial incapacity) until it causes incapacity for work. This incapacity is the basic "loss" for which the worker receives compensation under those statutes. A condition peculiar to the workplace which accelerates the progress of an occupational disease to such an extent that the disease finally causes the worker's incapacity to work constitutes a source of danger and difficulty to that worker and increases the possibility of that worker's ultimate loss. It constitutes, therefore, a hazard of the disease as the term "hazard" is commonly used.

We emphasize that in order for a substance to be a "hazard" of an occupational disease within the meaning of section 97-57, it must be, as we have indicated, a substance peculiar to the workplace. By this we mean that the substance is one to which the worker has a greater exposure on the job than does the public generally, either because of the nature of the substance itself or because the concentrations of the substance in the workplace are greater than concentrations to which the public generally is exposed.

Clearly, dust arising from the processing of synthetic fibers in textile plants, with which we here are concerned, is a substance to which, because of its nature, workers in those plants have a greater exposure than does the public generally. It is, therefore, a substance peculiar to the workplace.

[2] The legislature, recognizing that occupational diseases often develop slowly over long periods of time after exposures to offending substances at successive places of employment, determined by enacting section 97-57 to take "the breakdown practically where it occurs — with the last injurious exposure." *Haynes v. Feldspar Producing Co.,* 222 N.C. at 170, 22 S.E. 2d at 279.

All evidence in this record shows that Caulder's "break-down," *i.e.*, his incapacity for work, occurred only after he had worked for some thirteen years for Waverly Mills in very dusty conditions. Caulder had no incapacity for work when he began work at Waverly; he was totally incapacitated for work when he quit. Dr. Kunstling testified that the dusty conditions at Waverly Mills' plants, including dust from synthetic fibers, could cause the worsening of Caulder's lung disease. He said a person "who has a preexisting lung condition who is put in a very dusty environment of whatever type may have problems as a result of that environment." He testified that "if an individual who has preexisting chronic obstructive pulmonary disease works in an environment that is very dusty for two years to the extent that it aggravates his symptoms if he remains in that environment . . . I believe that it probably would contribute . . . or exacerbate his condition to at least a slight degree." With regard to Caulder specifically, Dr. Kunstling testified, "I would feel that Mr. Caulder's work environment during this recent period of time [with defendant] had been somewhat harmful to him primarily based on his history that he did find it an irritating environment, and I think that the actual composition of the environment is probably not so important. In fact, it possibly could have been harmful to him had there been no cotton at all in the environment . . . . Mr. Caulder said he stopped working in February of 1980 because of respiratory symptoms, and I feel that whatever the work environment was at that time, it was contributing to his pulmonary symptoms."

This is enough evidence to permit the Commission to find, as it did, that Caulder's exposures to dust at Waverly Mills' plants, including the last plant at which he worked, "contributed to his pulmonary symptoms and was harmful to him" and that Caulder's last injurious exposure to the hazards of his lung disease occurred while employed by Waverly Mills and while Employers Mutual Insurance Company was on the risk. Neither does the Commission's finding that dust from synthetic fibers is not known to cause chronic obstructive lung disease preclude a conclusion that exposure to it constituted a last injurious exposure to the hazards of the disease.

For the foregoing reasons, the decision of the Court of Appeals is

Affirmed.

Justice MEYER dissenting.

Apparently conceding that the inhalation of synthetic fiber dust is not known to cause an occupational disease, the majority states the issue presented on this appeal as follows: "[W]hether exposure to a substance which is not known to cause an occupational disease may nevertheless be a last injurious exposure to the hazards of such disease under N.C.G.S. § 97-57 if it makes the disease, already in progress, worse."

First, I continue to adhere to the position expressed in my dissent in *Rutledge v. Tultex Corp.*, 308 N.C. 85, 301 S.E. 2d 359 (1983). My position, there stated, is that any disease, in order to be compensable, must be an occupational disease, or must be aggravated or accelerated by an occupational disease or by an injury by accident arising out of and in the course of the employment.

Secondly, the majority readily concedes that in order for a substance to be a "hazard" of the disease it must be a *substance peculiar to the workplace*. Indeed, the majority states, "We emphasize that in order for a substance to be a 'hazard' of an occupational disease within the meaning of § 97-57, it must be, as we have indicated, a *substance peculiar to the workplace*." (Emphasis added.) It is as clear as the English language is capable of conveying that it is the *nature of the substance* itself which must be peculiar to the workplace and this test is not and cannot be met by the second alternative of the "either/or" test adopted by the majority. The majority expresses its new test as follows:

> By this we mean that the substance is one to which the worker has a greater exposure on the job than does the public generally, *either* because of the nature of the substance itself *or* because the concentrations of the substance in the workplace are greater than concentrations to which the public generally is exposed. (Emphasis added.)

Because we are not here concerned with whether the claimant has an occupational disease but only with the question of "last injurious exposure," the majority would have us completely disregard our treatment of similar terms in cases dealing solely

with whether the claimant had an occupational disease. The terms used by the majority here: "peculiar to the claimant's workplace" and the term "peculiar to the claimant's employment" used in determining the presence of an occupational disease are too similar to disregard. Their similarity demands a comparison.

In *Walston I* this Court, in an opinion by Huskins, J., said:

Disability caused by and resulting from a disease is compensable when, and only when, the disease is an occupational disease, or is aggravated or accelerated *by an occupational disease*, or by an injury by accident arising out of and in the course of the employment. G.S. 97-53(13); *Morrison v. Burlington Industries*, 304 N.C. 1, 282 S.E. 2d 458 (1981); *Booker v. Medical Center*, 297 N.C. 458, 256 S.E. 2d 189 (1979); *Anderson v. Motor Co.*, 233 N.C. 372, 64 S.E. 2d 265 (1951); *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760 (1950). (Emphasis added.)

*Walston v. Burlington Industries*, 304 N.C. 670, 679-80, 285 S.E. 2d 822, 828 (1982).

Unfortunately the members of this Court, including this writer, agreed to alter the opinion in *Walston I* by Order of the Court dated 8 March 1982 appearing at 305 N.C. 296, 285 S.E. 2d 822, and thus changed the last sentence of the above quoted portion of the opinion to read as follows:

Disability caused by and resulting from a disease is compensable when, and only when, the disease is an occupational disease, or is aggravated or accelerated *by causes and conditions characteristic of and peculiar to claimant's employment.* (Emphasis added.)

I am now of the opinion that we acted in haste and that we should not have changed the wording of the original opinion and am of the further opinion that we should now repudiate that change. Nevertheless, the language as changed clearly states that the subsequent aggravating cause or condition must be "characteristic of and peculiar to claimant's employment." This clearly means, contrary to the majority's view in the case *sub judice*, that it *cannot* be a cause or condition *not "characteristic of and peculiar to* the claimant's workplace" *or* one to which the general public is equally exposed.

The reader of the majority opinion is distracted from this comparison of similar terms used in different contexts (*i.e.*, last injurious exposure and occupational disease) by what I would call "judicial sleight-of-hand."

The majority says that the "substance" requirement of the term "substance peculiar to the workplace" can be satisfied not only by evidence of the nature of the substance but also by unusually high "concentrations" of a substance. The all too obvious question raised by the majority opinion but left unanswered is whether the requirement of a "substance peculiar to the workplace" can be satisfied by showing "concentrations" greater than those to which the public generally is exposed of ordinary substances not necessarily characteristic of or peculiar to a particular employment or workplace. The majority's choice of wording for its new test is confusing at best. I suppose the meaning the majority intends to convey is "substance peculiar to the workplace" or "concentration peculiar to the workplace."

The majority's choice of words in describing synthetic dust may be revealing. The majority opinion describes the airborne material in defendant Waverly Mills' plant not as "synthetic fiber dust" but as "dust arising from the processing of synthetic fibers." Does the majority equate "dust" arising from the processing of synthetic fibers with "dust" arising from sources not peculiar to the workplace? Would the majority apply its new "either/or" test to "concentrations" of such ordinary substances as common store and schoolyard or construction yard dust, dampness in the local car wash, cooking fumes in the restaurant kitchen, or cigarette smoke in the company office? If this is the case then the majority's new "either/or" test is indeed nothing more than "judicial sleight-of-hand" — now you have the "substance peculiar to" requirement and now you don't — it having been satisfied by the showing of "concentrations" of a very ordinary substance not at all peculiar to the workplace. Under the "or" portion of the majority's new test it is of course the "concentration" which is peculiar and not the "substance."

If it is the synthetic fibers in the air of defendant Waverly Mills' plant, as the majority seems to agree, which is the "substance peculiar to the workplace" to which Mr. Caulder had a greater exposure than does the public generally, then the "or"

part of the majority's new test, *i.e.*, "concentrations," is unnecessary.

The majority's holding today could have a far-reaching, detrimental impact on the employment opportunities for a significant number of our textile workers. If, as I suspect, the majority has set out upon the path which I anticipate, this Court may effectively preclude the subsequent employment of textile workers who are unable to continue to work in that industry because of a lung disease. Since *Rutledge* began the process, this Court continues to create a situation in which, in order to reduce losses from claims for total, permanent disability from older workers previously employed in the textile industry, no employer will consider employing anyone who has worked in that industry for a significant number of years, or will employ them only after exhaustive pulmonary function tests. If that is the result it is not the employers or their insurance carriers who will be hurt but the textile workers.

I would vote to reverse the decision of the Court of Appeals and to hold that the claimant was not last injuriously exposed in his employment at Waverly Mills.

Chief Justice BRANCH joins in this dissent.