The Full Commission has reconsidered its Opinion and Award filed on 29 August 2000 and reviewed the prior Opinion and Award of Deputy Commissioner Amy L. Pfeiffer based upon the record of the proceedings before her, the briefs and arguments on appeal, the additional evidence submitted by the parties on 29 March 2000 and the arguments of defendant in its Motion to Reconsider. In finding that defendant has shown good ground to reconsider the previous Full Commission Opinion and Award, the Full Commission hereby Vacates its Opinion and Award filed on 29 August 2000 and enters the following Opinion and Award.
 ***********
Plaintiff has not shown good ground to reconsider the evidence; rehear the parties or their representatives; or amend the Opinion and Award of the Deputy Commissioner. However, the Full Commission in its discretion, having reconsidered its previous Opinion and Award and the entire evidence of record, adopts and affirms, with modifications, the Deputy Commissioners holding and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a pretrial agreement and at the hearing before the Deputy Commissioner on 22 January 1999 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and the Industrial Commission has jurisdiction of the parties and the subject matter of this claim.
2. The parties have been correctly designated, and there is no question of misjoinder or non joinder of the parties.
3. On 27 May 1993, defendant-employer employed more than three employees. Defendant-employer and its employees were bound by and subject to the provisions of the North Carolina Workers Compensation Act.
4. On 27 May 1993, there existed an employer/employee relationship between defendant and plaintiff.
5. On 27 May 1993, defendant was self-insured for workers compensation purposes, with Constitution State Services Company acting as its servicing agent.
6. On 27 May 1993, plaintiff was an assembly technician for the employer, earning an average weekly wage of $496.80, which yields a compensation rate of $331.22.
7. On 27 May 1993, plaintiff sustained an occupational disease that arose out of and in the course of her employment with defendant-employer, which occupational disease resulted in occupational asthma and rhinusitis.
8. Plaintiff was paid temporary partial disability benefits as a result of her compensable occupational disease.
9. Plaintiff returned to full-time employment as of 22 March 1998.
10. At the hearing before the Deputy Commissioner, the parties indicated they would submit stipulated medical and employment records. These records were not received by the Deputy Commissioner prior to the filing of her Opinion and Award. However, these records have been submitted to the Full Commission and are a part of the record.
11. The facts in this matter are not in dispute. In addition, it is undisputed that plaintiff is entitled to additional temporary partial disability benefits. The issue raised in the hearing before the Deputy Commissioner and the appeal involves the commencing and expiration of the 300-week limitation set forth in N.C.G.S. 97-30, and if there have been any periods during which the 300-week limitation was tolled.
12. On 21 January 2000, the Full Commission filed an Order in this matter requesting the parties to submit additional medical evidence regarding date upon which plaintiff was injured and evidence relating to the type of benefits received by plaintiff beginning on 27 May 1993. This evidence was submitted and is hereby made a part of the evidentiary record.
 ***********
Based upon the greater weight of the evidence of record in this matter, the Full Commission adopts, with modifications, the findings of fact found by the Deputy Commissioner and finds as follows:
 FINDINGS OF FACT
1. On 1 February 1994, while employed by defendant-employer, plaintiff contracted dermatitis, an occupational disease, due to exposure to chemicals. This occupational disease was the subject of I.C. No. 567338. There was no Form 21 approved by the Commission for plaintiffs claim in I.C. No. 567338. However, plaintiff settled this case with a compromise settlement agreement that was approved by the Commission on 24 September 1994.
2. The present case, I.C. No. 421506, involves a claim of occupationally-induced asthma. Plaintiffs claim for occupationally-induced asthma was accepted by defendant and benefits were paid to her, but there has been no Form 21 agreement approved by the Industrial Commission to memorialize this acceptance.
3. As a result of her compensable occupational disease that is the subject of this claim, plaintiff was unable to work in any capacity for approximately four weeks beginning on 27 May 1993. From 27 May 1993 through 25 June 1993, plaintiff was paid her full salary through a salary continuation plan. Thereafter, defendant was able to accommodate plaintiff by allowing her to return to work in late June 1993 in an office position where there was an environment free of the chemicals that triggered her compensable occupational disease. Aside from a two week period during which plaintiff was paid her full salary through defendants salary continuation plan, plaintiff continued working in this accommodated office position and earned her pre-injury average weekly wage until 4 November 1994.
4. Subsequent to 4 November 1994, plaintiff was unable to continue working for defendant and did not work in any capacity for any employer until 19 May 1995. For the initial three months following 4 November 1994, plaintiff received her full salary through defendants salary continuation plan. Thereafter, plaintiff received seventy-five percent of her salary through this plan for an additional two months.
5. On 19 May 1995, plaintiff obtained employment with the city of Rocky Mount. Because plaintiff earned less than her pre-injury average weekly wage in this position, defendant paid plaintiff temporary partial disability compensation from 19 May 1995 through 28 July 1995.
6. On 28 July 1995, plaintiffs employment with the city of Rocky Mount ended. From 28 July 1995 through 17 February 1998, plaintiff was again unable to earn wages in her former position with defendant or in any other employment as the result of her occupational disease. Accordingly, plaintiff was paid temporary total disability compensation by defendant during the period of 28 July 1995 through 17 February 1998.
7. On 17 February 1998, plaintiff returned to work at a jewelry store earning less than her pre-injury average weekly wage. Because of her diminished earning capacity, defendant paid plaintiff temporary partial disability compensation from 17 February 1998 through 22 March 1998.
8. On 19 May 1998, plaintiff obtained employment as an income assistance caseworker with the Department of Social Services in Edgecombe County earning less than her pre-injury average weekly wage. As of the date of the hearing before the Deputy Commissioner, plaintiff remained employed in this capacity.
9. Plaintiff has not received any indemnity benefits since 22 March 1998.
10. Mistakenly believing that a Form 21 agreement had been approved, in April 1998 defendant tendered to plaintiff a Form 26 Supplemental Agreement for Compensation agreeing to pay plaintiff temporary partial disability benefits in various amounts from 17 February 1998 through 25 February 1999. In the Form 26, defendant contended that the statutory 300-week limitation for temporary partial disability benefits expired in plaintiffs case on 25 February 1999. However, defendant now contends that plaintiffs temporary partial benefits expired as of 2 March 1999. Defendants contention is based on 27 May 1993, the first date of plaintiffs disability, as the commencement date of the statutory 300-week period.
11. Plaintiff refused to sign the Form 26 agreement, contending that her entitlement to partial benefits extended for several months beyond either the February or March 1999 date. The Form 26 agreement was not forwarded to the Commission and consequently has not been approved by the Commission. Furthermore, defendant has not paid plaintiff any temporary partial disability benefits since 22 March 1998 even though defendant was ordered to do so by Deputy Commissioner Pfeiffers Order filed 28 January 1999.
12. Based upon the evidence of record, plaintiff has not been rated with a permanent partial impairment as the result of her occupational disease. Absent a rating for permanent partial disability, the more favorable remedy for plaintiff is to receive temporary partial disability compensation.
13. Plaintiff was unable to earn wages in any employment for a month after the date she contracted the occupational disease, namely 27 May 1993. Thereafter, during the next year and one-half when she continued her employment in an accommodated office position with defendant, she missed an additional period of two weeks during which she was incapable of earning any wages in any employment. Furthermore, although plaintiff may have been employed at full salary because of defendants salary continuation plan during the period between 26 June 1993 and 4 November 1994, she was nevertheless disabled as she was removed from her regular duty and accommodations were made to place her in an office where she would no longer be exposed to the offending chemicals.
14. While it is true that plaintiff may have been diagnosed by competent medical authority on 6 April 1994, the diagnosis date is not the "date of injury when the date of disability occurred almost one year earlier and constitutes the "date of injury for purposes of the statute. Accordingly, the "date of injury for plaintiff is 27 May 1993 and it is from that date that the statutory 300-week period under G.S. 97-30 begins to run.
 ***********
Based the foregoing stipulations, findings of fact and conclusions of law, the Full Commission concludes as follows
 CONCLUSIONS OF LAW
1. Plaintiffs date of disability and consequently her date of injury is 27 May 1993, the date she first became incapacitated to earn the same or greater wages as a result of her compensable occupational disease.Caulder v. Mills, 314 N.C. 70, 331 S.E.2d 646 (1985); N.C.G.S. 97-2(9).
2. Therefore, the statutory 300-week limitation for temporary partial disability benefits begins on 27 May 1993, the date plaintiff was first disabled due to her compensable occupational disease. N.C.G.S. 97-2(9) and 97-30.
3. Defendant is entitled to deduct from the statutory 300-week period the four weeks from 27 May 1993 through 25 June 1993 during which salary continuation was paid to plaintiff pursuant to N.C.G.S. 97-29. N.C.G.S.97-30.
4. Although plaintiff worked for defendant-employer at full wages from late June 1993 through 4 November 1994, she was nevertheless partially disabled and working in an accommodated position due to her compensable occupationally-induced asthma and received her full salary because of defendants salary continuation plan and not because of her ability to earn wages. It has long been established that salary alone is not necessarily indicative of wage earning capacity or disability. Therefore, this period of time does not toll the 300-week limitation but is rather a part of the period for which partial disability benefits were received by plaintiff during the 300-week period that continued to run. N.C.G.S. 97-30.
5. The applicable statute dictates that a claimant receive a maximum of 300 weeks of temporary partial disability compensation starting with the date of injury, and deducting any periods of total disability. No exception is made in the statute for tolling the 300-week limitation regardless of any periods during which the claimant is able to work and earn pre-injury wages. N.C.G.S. 97-30.
6. Furthermore, defendant is entitled to a credit towards the statutory 300-week period for the any periods of time that plaintiff received her full salary and seventy-five percent of her salary through the employers salary continuation plan. N.C.G.S. 97-30 and 97-42.
7. Plaintiff is entitled to temporary partial disability compensation beginning 27 May 1993 and continuing for a maximum of 300 weeks thereafter. Plaintiff is not entitled to temporary partial disability benefits during periods she received total disability compensation and periods that she received her salary through the employers salary continuation plan including the time during which she was employed with accommodations. N.C.G.S. 97-30.
8. For any temporary partial disability payments owed which were not in dispute on appeal to the Full Commission, and therefore late, plaintiff is entitled to a 10% late penalty payment, which is apparently not contested by defendant. N.C.G.S. 97-18.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. If not already paid, defendant shall pay plaintiff all periods of appropriate temporary partial disability benefits in accordance with the Conclusions of Law in this case. For any temporary partial disability payments not in dispute on appeal to the Full Commission, and therefore late, defendant shall pay a 10% late penalty.
2. Defendant shall bear the costs of this proceeding.
This the ___ day of February 2001.
 S/_______________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER