Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies and affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on 26 October 1999, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers Compensation Act at all relevant times.
2. The Maryland Insurance Group/Zurich Insurance Company was defendant-carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. On or about 1 August 1995, plaintiff contracted a compensable occupational disease while employed with defendant-employer.
5. Defendants initially denied plaintiffs claim by filing a Form 61. However, by letter dated 29 April 1996, defendants subsequently accepted the claim.
6. Plaintiffs compensation rate is $478.00 per week.
7. Plaintiff started missing work at Cairn Studios on 8 November 1995. The employment relationship between plaintiff and defendant-employer ended on 2 February 1996.
8. On 1 February 1996, plaintiff accepted an offer of employment with Futuristic, Inc., of Tennessee. He began working for them within a very short time. Defendants had knowledge that plaintiff had begun working with Futuristic, Inc.
9. Defendants have paid $58,316.00 in temporary total disability benefits to plaintiff at the rate of $478.00 per week from 7 August 1997 through 25 November 1999. Plaintiff continues to receive the weekly benefits from defendants.
10. Defendants never filed a Form 63 in this case.
11. Defendants first gave formal notice that they were contesting the compensability of plaintiffs claim on 21 October 1998 when the Form 33 was filed.
12. The following documents were stipulated into evidence:
a. Dr. Michael Haahs, seven pages;
b. Carolinas Medical Center, seven pages;
c. Presbyterian Hospital, three pages;
d. The Nalle Clinic, two pages;
e. Charlotte Pulmonary Associates, six pages;
f. Lake Norman Regional Medical Center, seventeen pages;
g. Lake Norman Cardiology, one page;
h. Dr. John H. Cooper, two pages;
i. Dr. Jerry B. Lemler, twelve pages;
j. Behavioral Medicine Institute, fourteen pages;
k. Knoxville Pulmonary Group, seventeen pages;
l. University of Tennessee Memorial Hospital, thirteen pages;
m. Neurology Associates of Knoxville, six pages;
n. Claiborne County Hospital, thirty-four pages;
o. Corbin Medical Associates, three pages;
p. Vanderbilt Clinic, five pages;
q. Unidentified Medical Reports, three pages;
r. University of Cincinnati Medical Center, twelve pages;
s. Aring Neurology, six pages;
t. Corval, twenty-eight pages;
u. Plaintiffs Answers to Interrogatories;
 v. Plaintiffs claim against Futuristic, Inc., filed in Claiborne County, Tennessee;
 w. I.C. Forms 18, 19, 61, 33, 24, and June 24, 1999 Administrative Decision Order; and
x. Seven pages from defendant-carriers.
 ***********
Based upon all of the competent evidence adduced from the record and the reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. On 4 October 1993, defendant-employer, a manufacturer of plastic figurines, hired plaintiff as its production manager. The figurines ranged in size from two ounces to two and one-half gallons. Raw resin was pre-mixed for the small figurines, while making the large figurines required plaintiff to remove a plug and fill the hole with foam. This activity generated isocynates, which plaintiff inhaled on a daily basis.
2. On or about 1 August 1995, plaintiff began to experience tightness in his chest and breathing problems. He reported this to his employer after he sought medical treatment on 8 November 1995. Defendant-employer completed a Form 19, Report of Injury to Employee, on 13 November 1995. The Form 19 was forwarded to the Industrial Commission.
3. Plaintiff began missing work on 8 November 1995. He left employment with defendant-employer on 2 February 1996. Defendants accepted plaintiffs claim as compensable on 29 April 1996. Plaintiffs average weekly wage while working for defendant-employer was $798.07, which yielded the maximum weekly indemnity compensation rate for 1995 of $478.00.
4. On 1 February 1996, Futuristic, Inc. of Bean Station, Tennessee, hired plaintiff as a sales manager at a salary of $40,000.00 per year. Plaintiff worked 90% of his time as production manager, where he took inventory of stock, prepared schedules and ordered raw materials for upholstery manufacturing.
5. During the course of his employment with Futuristic, Inc., plaintiff was exposed to dye isocyonates, formaldehyde, hardwood dust, fibers and other pollutants. He experienced symptoms due to this exposure of coughing, wheezing, fatigue, shortness of breath, and headaches.
6. Plaintiff began receiving medical treatment from Dr. Elise Schriver in Knoxville, Tennessee in April 1997, due to his chemical exposure. He also sought medical treatment from other providers, for which defendants paid.
7. Due to his lung condition, plaintiff terminated his employment with Futuristic, Inc., on 4 August 1997. He has not returned to work for any employer since that time.
8. Defendant employer began voluntarily paying plaintiff weekly indemnity compensation in the amount of $478.00 beginning on 7 August 1997, and continued making weekly payments until 19 April 2000, the date of the Opinion and Award of the Deputy Commissioner. At that time, defendants had paid plaintiff a total of $67,193.12 in indemnity compensation.
9. On 3 June 1998, Certified B Reader Dr. Glenn Baker confirmed plaintiffs exposure to isocynates while employed with Futuristic, Inc. Because plaintiff improved somewhat after leaving the employment with defendant-employer, then worsened after his renewed exposure at Futuristic, Inc., Dr. Baker concluded that the continued exposure to isocynates significantly exacerbated plaintiffs occupational disease.
10. The greater weight of the medical evidence supports a finding that plaintiff was last injuriously exposed to harmful chemicals and other materials which significantly contributed to his disease while employed with Futuristic, Inc.
11. Plaintiff was aware that his lung problems were exacerbated by his employment with Futuristic, Inc., evidenced by his filing of a workers compensation claim in Tennessee against them.
 *********** CONCLUSIONS OF LAW
1. Section 97-57 of the Workers Compensation Act states that when a worker has an occupational disease, defendant-employer in whose employment the worker was last injuriously exposed to the hazards of such disease and any carrier on the risk at that time shall be liable for the occupational disease. This section of the Act does not require the claimant to show that the last exposure caused or significantly contributed to the disease, or even substantially worsened his condition. Last injurious exposure means no more than an exposure which proximately augmented the disease to any extent, however slight. Haynesv. Feldspar Products Company, 222 N.C. 163, 22 S.E.2d 275 (1942); Caulderv. Mills, 314 N.C. 70, 331 S.E.2d 646 (1985).
2. Plaintiffs last injurious exposure to the risk of developing or augmenting his occupational disease occurred subsequent to his employment with defendant-employer. N.C. Gen. Stat. 97-57; Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983). Plaintiff was last injuriously exposed to the hazards of such diseases while an employee of Futuristic, Inc., from February 1996 through 7 August 1997.
3. Since plaintiffs last injurious exposure occurred subsequent to his employment with defendant-employer, he is not entitled to compensation for an occupational disease to be paid by defendant-employer in this case after 7 August 1997. Jones v. Beaunit Corp., 72 N.C. App. 351,324 S.E.2d 624 (1985). Accordingly, defendants have overpaid plaintiff indemnity compensation in the amount of $67,193.12, in addition to medical expenses, if any, related to plaintiffs treatment after 7 August 1997.
 *********** ORDER
1. Plaintiffs claim for continuing benefits from defendants is, and under the law must be, DENIED.
2. Each side shall pay its own costs.
This the day of January, 2001.
 S/_______________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/____________________ DIANNE C. SELLERS COMMISSIONER
 S/____________________ RENEE C. RIGGSBEE COMMISSIONER