***********
In accordance with the directives of the North Carolina Court of Appeals and upon review of the competent evidence of record, the Full Commission amends part of the prior Opinion and Award and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as maters of law the following, which were entered into by the parties in their Pre-Trial Agreement which was filed on 26 October 1999, and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The Industrial Commission has jurisdiction over the subject matter of this case, the parties are properly before the Commission, and the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act at all relevant times.
2. The Maryland Insurance Group / Zurich Insurance Company was defendant-carrier on the risk.
3. The employee-employer relationship existed between the parties at all relevant times.
4. On or about 1 August 1995, plaintiff contracted a compensable occupational disease while employed with defendant-employer.
5. Defendants initially denied plaintiff's claim by filing a Form 61. However, by letter dated 29 April 1996, defendants subsequently accepted the claim.
6. Plaintiff's compensation rate is $478.00 per week.
7. Plaintiff started missing work at Cairn Studios on 8 November 1995. The employment relationship between plaintiff and defendant-employer ended on 2 February 1996.
8. On 1 February 1996, plaintiff accepted an offer of employment with Futuristic, Inc., of Tennessee. He began working for them within a very short time. Defendants had knowledge that plaintiff had begun working with Futuristic, Inc.
9. Defendants have paid $58,316.00 in temporary total disability benefits to plaintiff at the rate of $478.00 per week from 7 August 1997 through 25 November 1999. Plaintiff continues to receive the weekly benefits from defendants.
10. Defendants never filed a Form 63 in this case.
11. Defendants first gave formal notice that they were contesting the compensability of plaintiff's claim on 21 October 1998 when they filed the Form 33.
12. The following documents were stipulated into evidence:
a. Dr. Michael Haahs, seven pages;
b. Carolinas Medical Center, seven pages;
c. Presbyterian Hospital, three pages;
d. The Nalle Clinic, two pages;
e. Charlotte Pulmonary Associates, six pages;
f. Lake Norman Regional Medical Center, seventeen pages;
g. Lake Norman Cardiology, one page;
h. Dr. John H. Cooper, two pages;
i. Dr. Jerry B. Lemler, twelve pages;
j. Behavioral Medicine Institute, fourteen pages;
k. Knoxville Pulmonary Group, seventeen pages;
l. University of Tennessee Memorial Hospital, thirteen pages;
m. Neurology Associates of Knoxville, six pages;
n. Claiborne County Hospital, thirty-four pages;
o. Corbin Medical Associates, three pages;
p. Vanderbilt Clinic, five pages;
q. Unidentified Medical Reports, three pages;
r. University of Cincinnati Medical Center, twelve pages;
s. Aring Neurology, six pages;
t. Corval, twenty-eight pages;
u. Plaintiff's Answers to Interrogatories;
 v. Plaintiff's claim against Futuristic, Inc., filed in Claiborne County, Tennessee;
 w. I.C. Forms 18, 19, 61, 33, 24, and June 24, 1999 Administrative Decision Order; and
x. Seven pages from defendant-carriers.
 ***********
In accordance with the directives of the North Carolina Court of Appeals and the competent evidence of record the Full Commission makes the following:
 FINDINGS OF FACT
1. On 4 October 1993, defendant-employer, a manufacturer of plastic figurines, hired plaintiff as its production manager. The figurines ranged in size from two ounces to two and one-half gallons. Raw resin was pre-mixed for the small figurines, while making the large figurines required plaintiff to remove a plug and fill the hole with foam. This activity generated isocynates, which plaintiff inhaled on a daily basis.
2. On or about 1 August 1995, plaintiff began to experience tightness in his chest and breathing problems. He reported this to his employer after he sought medical treatment on 8 November 1995. Defendant-employer completed a Form 19, Report of Injury to Employee, on 13 November 1995. The Form 19 was forwarded to the Industrial Commission.
3. Plaintiff began missing work on 8 November 1995. He left employment with defendant-employer on 2 February 1996. Defendants accepted plaintiff's claim as compensable on 29 April 1996. Plaintiff's average weekly wage while working for defendant-employer was $798.07, which yielded the maximum weekly indemnity compensation rate for 1995 of $478.00.
4. On 1 February 1996, Futuristic, Inc. of Bean Station, Tennessee, hired plaintiff as a sales manager at a salary of $40,000.00 per year. Plaintiff worked 90% of his time as production manager, where he took inventory of stock, prepared schedules and ordered raw materials for upholstery manufacturing.
5. During the course of his employment with Futuristic, Inc., plaintiff was exposed to dye isocynates, formaldehyde, hardwood dust, fibers and other pollutants. He experienced symptoms due to this exposure of coughing, wheezing, fatigue, shortness of breath, and headaches.
6. Plaintiff began receiving medical treatment from Dr. Elise Schriver in Knoxville, Tennessee in April 1997, due to his chemical exposure. He also sought medical treatment from other providers, for which defendants paid.
7. Due to his lung condition, plaintiff terminated his employment with Futuristic, Inc., on 4 August 1997. He has not returned to work for any employer since that time.
8. In October 1996, plaintiff filed a Form 18 Notice of Accident to Employer in which he claimed that he was disabled as a result of his exposure to chemicals while employed by defendant employer, Cairn Studios, LTD.
9. Based upon plaintiff's allegations in the Form 18, defendant employer began voluntarily paying plaintiff weekly indemnity compensation in the amount of $478.00 beginning on 7 August 1997, and continued making weekly payments until 19 April 2000, the date of the Opinion and Award of the Deputy Commissioner. At that time, defendants had paid plaintiff a total of $67,193.12 in indemnity compensation, along with an undetermined amount of medical compensation.
10. On 3 June 1998, Certified B Reader Dr. Glenn Baker confirmed plaintiff's exposure to isocynates while employed with Futuristic, Inc. Because plaintiff improved somewhat after leaving the employment with defendant-employer, then worsened after his renewed exposure at Futuristic, Inc., Dr. Baker concluded that the continued exposure to isocynates significantly exacerbated plaintiff's occupational disease.
11. The greater weight of the medical evidence supports a finding that plaintiff was last injuriously exposed to harmful chemicals and other materials which significantly contributed to his disease while employed with Futuristic, Inc.
12. Plaintiff was aware that his lung problems were exacerbated by his employment with Futuristic, Inc., evidenced by his filing of a workers' compensation claim in Tennessee against them.
13. On 23 November 1998, plaintiff filed an amended Form 18 Notice of Accident to Employer in which he again attributed his disability to exposure to chemicals while employed by defendant employer, Cairn Studios, LTD.
14. Although defendant employer was aware that plaintiff had begun working for Futuristic, Inc., because plaintiff was initially hired as a salesman, defendant-employer had a reasonable belief that plaintiff was not experiencing further exposure to harmful chemicals in his new position. Defendants did not discover plaintiff's further exposure to isocynates at Futuristic, Inc. until the Summer of 1998 when they began to receive medical reports which indicated plaintiff's later exposure at Futuristic, Inc. Defendants filed a motion to terminate plaintiff's benefits within a reasonable time thereafter.
15. Defendants had accepted plaintiff's original claim for occupational disease while employed by Cairn Studios, LTD. on 29 April 1996, approximately three months after plaintiff stopped working. When notified by plaintiff that he was again totally disabled for the same type of respiratory problems which they had previously deemed compensable, without information as to further exposure in later employment, it was reasonable for defendants to resume paying compensation. While defendants are charged with using due diligence to determine the validity of plaintiff's claim prior to voluntarily beginning to pay compensation, the undersigned find that under the facts of this case, defendants' reliance on plaintiff's claim that his current respiratory problems were related to his employment with defendant Cairn Studios, LTD., was reasonable. Defendants had diligently investigated the validity of plaintiff's disability claim in 1996 and had found plaintiff's claim to be compensable. Plaintiff's 1996 claim was based upon exposure to specific chemicals in the workplace. Plaintiff's job title of sales manager would not reasonably be expected to further expose plaintiff to the same chemicals. Plaintiff was aware of his re-exposure to the same harmful chemicals in his new employment and that his new exposure was the cause of his respiratory problems. Plaintiff filed a claim for resumption of compensation without advising defendants of his new exposure to isocynates. It is not reasonable to expect defendants to deny a second claim for the same disability when they were unaware of and had no reason to suspect any further harmful exposure by a subsequent employer.
16. Defendants paid compensation for more than 90 days and thus the payments constituted an award of the Commission as defendants did not contest liability until October 1998; however, defendants can now contest liability based upon newly discovered evidence. Discovering that plaintiff was last injuriously exposed to isocynates at his job in Tennessee constitutes newly discovered, material evidence which could not have been reasonably discovered with due diligence within 90 days of defendant employer's beginning voluntary payments of temporary total disability compensation on 7 August 1997.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 CONCLUSIONS OF LAW
1. Section 97-57 of the Workers' Compensation Act states that when a worker has an occupational disease, defendant-employer in whose employment the worker was last injuriously exposed to the hazards of such disease and any carrier on the risk at that time shall be liable for the occupational disease. This section of the Act does not require the claimant to show that the last exposure caused or significantly contributed to the disease, or even substantially worsened his condition. Last injurious exposure means no more than an exposure which proximately augmented the disease to any extent, however slight. Haynesv. Feldspar Products Company, 222 N.C. 163, 22 S.E.2d 275 (1942); Caulderv. Mills, 314 N.C. 70, 331 S.E.2d 646 (1985).
2. Plaintiff's last injurious exposure to the risk of developing or augmenting his occupational disease occurred subsequent to his employment with defendant-employer. N.C. Gen. Stat. § 97-57; Rutledge v. TultexCorp., 308 N.C. 85, 301 S.E.2d 359 (1983). Plaintiff was last injuriously exposed to the hazards of such diseases while an employee of Futuristic, Inc., from February 1996 through 7 August 1997.
3. Since plaintiff's last injurious exposure occurred subsequent to his employment with defendant-employer, he is not entitled to compensation for an occupational disease to be paid by defendant-employer in this case after 7 August 1997. Jones v. Beaunit Corp., 72 N.C. App. 351,324 S.E.2d 624 (1985). Further, plaintiff knew he had been exposed to chemicals while employed at Futuristic, Inc., and that the exposure had augmented his lung condition. Plaintiff's knowledge is inferred by his filing of a workers' compensation claim in Tennessee against Futuristic, Inc. Accordingly, defendants have overpaid plaintiff indemnity compensation in the amount of $67,193.12, in addition to medical expenses, if any, related to plaintiff's treatment after 7 August 1997. The Court of Appeals in its decision in this case mandated that defendants are entitled to repayment of those amounts in order to prevent a double recovery by plaintiff should he prevail in a compensation claim against parties ultimately held liable for his disability.
4. Defendants began voluntary payments of temporary total disability compensation on 7 August 1997. Pursuant to N.C. Gen. Stat. § 97-18(d), defendants had 90 days from that date within which to contest plaintiff's claim, or be deemed to have waived the right to do so. Higgins v. MichaelPowell Bldrs., 132 N.C. App. 720, 515 S.E.2d 17 (1999). However, an employer "may contest the compensability of or its liability for the claim after the 90-day period or extension thereof when it can show that material evidence was discovered after that period that could not have been reasonably discovered earlier. . . ." N.C. Gen. Stat. § 97-18(d).
5. To prevail on the grounds of newly discovered evidence, defendants must show that the evidence is new and "that when the award was entered, evidence which was material to the case existed that he did not learn about through due diligence until later." Wall v. Dept. of HumanResources: Div. of Youth Services, 99 N.C. App. 330, 332, 393 S.E.2d 109,110 (1990), disc. review denied, 328 N.C. 98, 402 S.E.2d 430 (1991).
6. Defendants in this case had no reason to believe that plaintiff was last injuriously exposed to harmful chemicals in the course of his employment with Futuristic, Inc., until the Summer of 1998 when they began to receive medical reports which indicated plaintiff's later exposure at Futuristic, Inc. While defendants are charged with using due diligence to determine the validity of plaintiff's claim prior to voluntarily begin paying compensation, the undersigned find that under the facts of this case, defendants' reliance on the claims of plaintiff was reasonable. Defendants had diligently investigated the validity of plaintiff's disability in 1996 and had found plaintiff's claim to be compensable. It is not reasonable to expect defendants to deny a second claim for the same disability when they were unaware of and had no reason to suspect any further harmful exposure by a subsequent employer. Accordingly, defendants' subsequent knowledge of plaintiff's exposure at Futuristic, Inc. constitutes newly discovered material evidence in this claim, and defendants properly contested their liability for plaintiff's occupational disease based on that evidence. N.C. Gen. Stat. §97-18(d).
7. As stated above, 90 days after which defendants began to pay plaintiff compensation without contesting the compensability of the claim, defendants were deemed to have waived the right to contest liability and plaintiff's entitlement to the compensation became an award of the Commission pursuant to N.C. Gen. Stat. § 97-82(b) as a memorandum of agreement by the parties; however, the statute also provides that an employer may contest its liability beyond the 90 day limit based upon newly discovered evidence. It is not clear from the statute whether the effect of successfully demonstrating the existence of newly discovered evidence dissolves the award which had been created by the lapse of 90 days. The Full Commission does note, however, that the Court of Appeals remanded this claim to the Commission "for further findings of fact as to whether plaintiff's subsequent exposure constitutes newly discovered evidence that warrants the Commission to set aside the award which resulted pursuant to N.C. Gen. Stat. § 97-82." Therefore, in accordance with the mandate of the Court of Appeals, the Full Commission, in this case, must set aside the award which was created by the lapse of 90 days of continuing voluntary payment of compensation.
 ***********
In accordance with the directives of the North Carolina Court of Appeals, the Full Commission enters the following:
 ORDER
1. Plaintiff's claim for continuing benefits from defendants is, and under the law must be, DENIED.
2. The statutory award granted to plaintiff pursuant to N.C. Gen. Stat. § 97-82(b) is hereby set aside.
3. Defendants are entitled to a credit in the amount of $67,193.12 which was paid to plaintiff in compensation which was not due and payable when paid. Further, defendants shall be reimbursed for any amount overpaid by defendants in medical treatment for plaintiff's occupational disease which plaintiff receives from other liable parties.
4. Each side shall pay its own costs.
This the ___ day of March, 2003.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ DIANNE C. SELLERS COMMISSIONER
 S/_______________ RENEE C. RIGGSBEE COMMISSIONER