* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives.
The Full Commission adopts the Opinion and Award of Deputy Commissioner Phillips with modifications.
 * * * * * * * * * * *
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as: *Page 2 
 STIPULATIONS
1. The parties are subject to the N.C. Worker's Compensation Act.
2. An employee/employer relationship existed between plaintiff and defendant.
3. The carriers liable on the risk are correctly named above (St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company coverage through 03/31/05 and Hartford Insurance coverage beginning 04/01/05).
4. Plaintiff's average weekly wage is $433.33 with a compensation rate of $288.90 per week by stipulation of the parties.
5. Defendants St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company admit plaintiff sustained an occupational disease on October 2, 2003, but admit liability only until March 31, 2005. Defendant Hartford Insurance denies compensability.
6. Defendants St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company admit the disease arose out of and in the course of employment and is compensable. Defendant Hartford Insurance denies that plaintiff suffered an occupational disease arising out of and in the course of plaintiff's employment with defendant.
7. Various medical records and other documents have been stipulated into evidence with the Pre-hearing Agreement.
 * * * * * * * * * * *
Based upon all the competent evidence from the record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the Full Commission hearing, plaintiff was 58 years old with a high school education. Plaintiff attended nursing classes for one and a half years at a community *Page 3 
college, but did not complete the nursing program. Prior to her employment with defendant, plaintiff worked as a lead person in a garment factory making coats for approximately ten years.
2. Plaintiff has been employed as a press welder since 1989 for defendant, which manufactures shopping carts. In a typical eight-hour day plaintiff's job duties include welding 1,400 to 1,600 baby seats that eventually become part of shopping carts. As a press welder, plaintiff is required to engage in repetitive movement, gripping, and exerting pressure in the palms of both of her hands. Plaintiff's assistant first places the baby seat wire into a jig, a container that holds the wire form. Plaintiff holds the handles of the jig which is fed into a welder that makes approximately two (2) to four (4) sequential welds per seat, depending on the style of the seat. Plaintiff would then have to use considerable force to pry the baby seat out of the jig with a pry tool. Prior to developing problems with her hands, plaintiff was able to remove the seat with her hands without the assistance of a tool. The repetitive motion of plaintiff's press welding job is corroborated by defendant's written job description of the press welder job which indicates repetitive operations with some skill required.
3. In 1996, plaintiff began experiencing pain and numbness mostly in her right wrist with needle sensations. Although, plaintiff reported her complaints to her supervisor, Bonita Carver, an injury report was not completed at that time.
4. Plaintiff testified that while holding the jig handles she experienced pain in the palm of her hands, around her thumb, and near her wrist joint and that the pain would sometimes shoot up her arm. Plaintiff indicated on a scale of one to ten that her pain ranged from a seven to an eight, depending on the day, while performing her job.
5. On April 6, 1998, plaintiff presented to Dr. David Peltzer, plaintiff's family doctor, with a several week history of left arm pain. Dr. Peltzer's notes indicate that plaintiff's *Page 4 
job involved repetitive work. Upon examination, plaintiff had no tenderness of the left shoulder, left elbow, or left wrist. Plaintiff did have tenderness over her cubital tunnel of her left forearm. Dr. Peltzer diagnosed plaintiff with Cubital Tunnel Syndrome, prescribed medication, and referred plaintiff for an EMG if she had no improvement.
6. On April 19, 2001, plaintiff presented to Dr. Peltzer with complaints of pain for six months or so in her right ring finger with some swelling in her PIP joint. Plaintiff also had pain along the dorsal aspect of her hand overlying the fourth metacarpal with her finger sticking during flexion. Dr. Peltzer indicated in his notes that when plaintiff made a fist and tried to release her fingers, her ring finger became stuck but would release with extension of the fingers. Dr. Peltzer diagnosed plaintiff with trigger finger, prescribed Naprosyn, and told plaintiff if she continued to have trouble that he would refer her to a hand surgeon.
7. On November 6, 2002, plaintiff again presented to Dr. Peltzer with complaints of right wrist pain and left elbow pain for several weeks. Physical examination revealed some crepitance and swelling of plaintiff's right wrist, tenderness in her elbow over the lateral epicondyle, and normal grip strength. Dr. Peltzer diagnosed plaintiff with tennis elbow and right wrist arthritis and recommended that plaintiff use a counter-force brace to the left forearm. Dr. Peltzer indicated in his notes that he felt plaintiff's condition was an overuse injury secondary to her job.
8. On September 8, 2003 Dr. Peltzer saw plaintiff for continued complaints of right hand pain that wakes her up at night. Dr. Peltzer diagnosed plaintiff with right hand osteoarthristis and referred plaintiff for an EMG/NCV of her right hand. *Page 5 
9. On September 12, 2003 plaintiff underwent a right hand NCV with Neurology Associates which indicated severe right carpal tunnel syndrome. Dr. Peltzer's notes indicate that the carpal tunnel syndrome was caused by plaintiff's press welder job.
10. On March 7, 2003, defendant sent plaintiff to Hart Industrial Clinic, which diagnosed plaintiff with left epicondylitis and chronic bilateral hand pain and related plaintiff's problems to an underlying arthritic condition.
11. By letter dated January 15, 2004, St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company accepted plaintiff's carpal tunnel syndrome claim. On February 12, 2004 plaintiff was sent to Dr. William Pekman, a hand surgeon with Hickory Orthopaedic Center, who diagnosed plaintiff with right carpal tunnel syndrome. Epidural steroid injections were administered but did not help. Dr. Pekman discussed with plaintiff that she may need to consider surgical decompression and that some carpal tunnel patients have to change their occupation in order to avoid further symptoms. Plaintiff was given light duty restriction for three weeks. On March 16, 2004, Dr. Pekman indicated that plaintiff could either accept her condition at that point or consider surgical intervention. He again discussed that plaintiff may need to consider a change in occupation to avoid further symptoms.
12. Defendant's coverage by St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company ended March 31, 2005. On April 1, 2005 defendant Hartford Insurance came on the risk for defendant.
13. On April 13, 2005, pursuant to a March 8, 2005 Industrial Commission Order, plaintiff was sent by defendants to Dr. Pekman for a reevaluation of both of her hands. Dr. Pekman's note indicated that plaintiff was having recurrent symptoms in her right hand and persistent symptoms in her left hand. After discussing her treatment options, plaintiff indicated *Page 6 
she wanted to try non-operative treatment, and Dr. Pekman gave plaintiff an injection in her right carpal tunnel which plaintiff testified gave her some relief.
14. On April 3, 2006, plaintiff returned to Dr. Pekman with persisting symptoms despite trials of non-operative treatment. Dr. Pekman opined that at that point plaintiff's only viable option was surgical intervention due the progression of plaintiff's symptoms.
15. On August 9, 2006, plaintiff was seen by Dr. Kathryn Caulfield, a board certified hand surgeon with extensive experience in treatment of carpal tunnel syndrome. Dr. Caulfield diagnosed plaintiff with bilateral carpal tunnel syndrome with the right hand being worse. Dr. Caulfield recommended surgery due to changes in sensation and strength and discussed with plaintiff the possibility of a carpal tunnel release outpatient surgery.
16. Dr. Caulfield testified that plaintiff's press welder job with defendant is a substantial causative factor of plaintiff's bilateral carpal tunnel syndrome, and that persons who do that job have a higher risk of developing carpal tunnel syndrome than members of the population not similarly exposed. Dr. Caulfield recommended surgery on plaintiff's right hand first and then perhaps the left hand. Dr. Caulfield indicated that plaintiff's condition had gotten worse from 2003 to 2006 as plaintiff continued to work for defendant and that a delay in surgery creates a risk of permanent muscle weakness.
17. The Full Commission finds that the carpal tunnel release surgery for the right hand is reasonably necessary to effect a cure, provide relief, or lessen plaintiff's period of disability.
18. At the time of the hearing before the deputy commissioner, plaintiff was still performing her same job with defendant as a press welder making baby seats. Plaintiff testified that she had discussed with defendant's management the possibility of changing to another job *Page 7 
and that defendant offered plaintiff another press welding job making the grills to be placed on the bottom of the grocery carts. Plaintiff has performed this job before and testified that it involved similar repetitive type motions as making the baby seats.
19. Since April 1, 2005, plaintiff's condition has continued to worsen as she continued working in her same position for defendant. Plaintiff testified that the numbness and pain is worse and is a nine or ten on a one to ten scale. The more baby seats plaintiff welds in a day, the worse her symptoms are. Plaintiff testified that due to the numbness in her hands she had difficulty combing her hair, talking on the telephone, and driving to work.
20. Due to the worsening and severity of her pain from continued employment with defendant since April 1, 2005, plaintiff wishes to proceed with carpal tunnel surgery. However, plaintiff has been unable to get her group insurance to approve the surgery even though defendants have refused responsibility.
21. Prior to April 1, 2005, plaintiff's condition was not such that surgery was a necessity, nor did it cause plaintiff any incapacity from work. Plaintiff's condition progressed and was augmented due to her continued employment with defendant following April 1, 2005. Since then, plaintiff has been diagnosed with bilateral carpal tunnel syndrome as opposed to only right carpal tunnel syndrome which has progressed to the point of necessitating operative treatment.
22. Dr. Peltzer, Dr. Pekman, and Dr. Caulfield are of the opinion that plaintiff's employment with defendant caused her condition and that if plaintiff continues such employment her condition is likely to worsen or be aggravated.
23. The undersigned find that plaintiff's occupational disease was caused by her employment with defendant. Based upon the greater weight of the evidence, the undersigned *Page 8 
find that plaintiff's occupational disease was augmented and worsened by her employment with defendant following April 1, 2005 when defendant Hartford Insurance came on the risk for defendant. Therefore, defendant Hartford Insurance was on the risk at the time of plaintiff's last injurious exposure.
24. The greater weight of the evidence supports the finding that plaintiff is not capable of performing her job with defendant and should not be performing a job requiring repetitive activity. The Full Commission finds that plaintiff's job with defendant as a press welder is not suitable employment and that plaintiff would benefit from vocational rehabilitation.
 * * * * * * * * * * *
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Beginning in 1996, and continuing thereafter, plaintiff contracted a compensable occupational disease, carpal tunnel syndrome, which was caused by her employment with defendant. N.C. Gen. Stat. § 97-53(13). Plaintiff's occupational disease is characteristic of and peculiar to her employment with defendant, which created a greater risk of contracting plaintiff's occupational disease than members of the general population who are not exposed to that type employment. N.C. Gen. Stat. § 97-53(13).
2. Pursuant to N.C. Gen. Stat. § 97-57 where an occupational disease is compensable "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was last exposed under such employer, shall be liable". Last injurious exposure is defined as an exposure that proximately augmented the disease to any extent, however slight. Rutledge v. Tultex Corp./Kings Yarn,308 N.C. 85, 88, 301 S.E.2d 359, 362(1985)(citing Haynes v. Feldspar *Page 9 Producing Co., 222 N.C. 163, 166, 169, 22 S.E.2d 275, 277,278 (1942));See also Caulder v. Waverly Mills, 314 N.C. 70, 331 S.E.2d 646 (1985). The greater weight of the evidence supports that plaintiff's last injurious exposure to the conditions of her job with defendant that caused or augmented her occupational disease was after April 1, 2005 when Hartford Insurance Company came on the risk for defendant. N.C. Gen. Stat. § 97-57. Therefore, Hartford Insurance is liable for plaintiff's occupational disease beginning April 1, 2005.
3. Based upon the greater weight of the evidence and the competent expert opinions by plaintiff's medical providers, the Full Commission concludes that the press welder job with defendant is not suitable employment for plaintiff. N.C. Gen. Stat. § 97-32.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant Hartford Insurance is liable for plaintiff's occupational disease resulting from her employment with defendant from April 1, 2005.
2. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of the compensable disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen the plaintiff's period of disability, when bills for same have been submitted to and approved by the Industrial Commission. This shall include the examination by Dr. Caulfield, and surgeries with a physician selected by plaintiff.
3. In the event that the portion of this Opinion and Award which finds Hartford Insurance the carrier on the risk is appealed to the North Carolina Court of Appeals, Hartford *Page 10 
Insurance is ordered pursuant to N.C. Gen. Stat. § 97-86.1 to comply with all portions of this Opinion and Award. Hartford Insurance shall be reimbursed by St. Paul-Travelers Insurance/Charter Oaks Fire Insurance Company if St. Paul-Travelers Insurance/Charter Oaks Fire Insurance Company is ultimately held liable.
4. Defendants Hartford Insurance and St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company shall split the costs due to the Commission.
This the 27th day of November, 2007.
S/______________________ BUCK LATTIMORE COMMISSIONER
CONCURRING:
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
 S/______________________ BERNADINE S. BALLANCE COMMISSIONER *Page 1