***********
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Phillips and the briefs and arguments of the parties. The appealing party has not shown good grounds to reconsider the evidence, receive further evidence, or rehear the parties or their representatives. The Full Commission adopts the Opinion and Award of Deputy Commissioner Phillips with minor modifications.
 *********** PROCEDURAL RULING
Defendant Charter Oaks filed in its brief to the Full Commission on November 14, 2007 a motion to dismiss defendant The Hartford's appeal to the Full Commission for failure to comply *Page 2 
with North Carolina Industrial Commission Rule 701. The undersigned in their discretion, hereby, deny defendant Charter Oaks' motion to dismiss.
 ***********
The Full Commission finds as a fact and concludes as matters of law the following, which were entered into by parties as:
 STIPULATIONS
1. The parties are subject to the provisions of the North Carolina Worker's Compensation Act.
2. An employee/employer relationship existed between plaintiff and defendants.
3. St. Paul Travelers — Charter Oak Fire Insurance Company provided coverage through March 31, 2005 and Hartford Insurance Company provided coverage beginning April 1, 2005.
4. Plaintiff's average weekly wage is $599.75 per week from the stipulation of the parties at the hearing.
5. Defendants deny that plaintiff contracted an occupational disease on or about March 29, 2005, or thereafter.
6. Defendants deny that plaintiff's disease arose out of and in the course of employment and is compensable.
7. Various medical records and other documents have been stipulated into evidence with the pre-hearing agreement, and a job video was stipulated after the hearing.
 ***********
Based upon all the competent evidence from the record, the Full Commission finds as follows: *Page 3 
 FINDINGS OF FACT
1. Plaintiff began working as a welder framing shopping carts for defendant in September 1997. Plaintiff's job involved repetitive use of his hand and arms, particularly the right hand and arm which gripped a welding gun weighing 10 to12 pounds for most of the usual 40 to 56 hour work-week. The welding gun is similar to a pistol grip with a trigger that plaintiff pulled with his right index finger. The right hand and elbow are at times placed in awkward positions to make various welds. The left hand holds the piece being welded in place. Each shopping cart frame must have 24 to 30 welds. Plaintiff welded about 320 of the cart frames, which were 50 to 100 pounds each including the jig holder, per work day. The jig holder is made of solid steel and holds the pieces in place until they are welded together.
2. For several years, plaintiff experienced right hand pain, which continued to increase as he continued welding. Later, plaintiff's right index finger became numb. Plaintiff reported the problem, and was sent by the company nurse to Dr. Donald Campbell beginning March 9, 2005. A March 17, 2005 nerve conduction study ordered by Dr. Campbell indicated a normal right hand. Dr. Campbell thought plaintiff might have a neck problem, but defendant would not approve a spine evaluation.
3. After Hartford came on the risk on April 1, 2005 and after the April 6, 2005 denial letter from defendant St. Paul Traveler's, plaintiff sought treatment from Dr. Kathryn Caulfield, a board certified hand surgeon in Gastonia. On June 8, 2005, Dr. Caulfield examined and diagnosed plaintiff with carpal tunnel syndrome on the right hand, ulnar nerve palsy, and subcutaneous mass in his forearm. A June 28, 2005 electromyogram ordered by Dr. Caulfield indicated normal right median nerve, but moderate right ulnar nerve entrapment consistent with ulnar nerve palsy. Dr. Caulfield testified that these tests are often negative for carpal tunnel *Page 4 
syndrome even when a patient actually has carpal tunnel syndrome as shown on plaintiff's clinical exam.
4. On August 8, 2005, Dr. Caulfield performed right carpal tunnel syndrome release and right ulnar nerve transposition surgery, which improved plaintiff's symptoms. Dr. Caulfield's surgical findings were consistent with a diagnosis of carpal tunnel syndrome and ulnar nerve palsy. Dr. Caulfield testified, after looking at plaintiff's job video, to a moderate and more than fifty percent (50%) degree of confidence, that plaintiff's welding occupation was a substantial causative factor of plaintiff's carpal tunnel syndrome and ulnar nerve palsy, and that plaintiff's occupation has a higher risk of causing those conditions than members of the general population.
5. Dr. Caulfield placed plaintiff on no work status beginning with plaintiff's August 8, 2005 surgery until November 1, 2005. After returning to the same welder job, plaintiff experienced a recurrence of symptoms and began seeing Dr. Scott McCloskey, a board certified neurosurgeon in Hickory whose practice is thirty percent (30%) treatment of hand and arm problems. Prior to being written out of work for surgery on August 8, 2005, plaintiff had worked continuously for defendant in the same job at the same wage.
6. On October 2, 2006, Dr. McCloskey ordered neurophysiological studies, which revealed a normal median nerve, but abnormal ulnar nerve at plaintiff s right elbow. On January 24, 2007, Dr. McCloskey performed right ulnar nerve surgery to free the ulnar nerve from scar tissue that developed as a result of Dr. Caulfield's surgery. Dr. McCloskey testified after also looking at the job video that he had a high degree of confidence that plaintiff's welder occupation is a significant causative factor in plaintiff's recurrent ulnar nerve dysfunction and entrapment and plaintiff's carpal tunnel syndrome. Dr. McCloskey also testified to a high degree *Page 5 
of confidence that people with welding jobs have a higher degree of risk of plaintiff's conditions than persons not similarly exposed. Plaintiff is improving but is not currently at maximum medical improvement. Plaintiff has been out of work beginning January 10, 2007.
7. Although plaintiff had previously reported symptoms in his hand, wrist, and arm, prior to April 1, 2005, plaintiff had never been diagnosed with carpal tunnel syndrome or ulnar nerve palsy. Dr. Caulfield testified that the period of time from March 2005, when plaintiff underwent a negative nerve conduction study by Dr. Campbell, and June 2005, when plaintiff was first diagnosed with carpal tunnel syndrome and ulnar nerve palsy, was sufficient time to develop plaintiff's occupational disease. Based upon the greater weight of the evidence, the Full Commission finds that plaintiff was last injuriously exposed to the conditions of his employment with defendant that caused or augmented his occupational disease after April 1, 2005 when Hartford came on the risk.
 ***********
Based on the foregoing findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. On or about June 8, 2005 plaintiff contracted an occupational disease of right carpal tunnel syndrome and right ulnar nerve palsy which was caused by his employment with defendant. N.C. Gen. Stat. § 97-53(13).
2. The cause of plaintiff's occupational disease is characteristic of and peculiar to his employment with defendant. Plaintiff s employment with defendant created a greater risk of contracting the occupational disease than members of the general population who are not similarly exposed. N.C. Gen. Stat. § 97-53(13). *Page 6 
3. Plaintiff is entitled to temporary total disability compensation beginning August 8, 2005 through November 1, 2005, and January 10, 2007 and continuing until plaintiff returns to work or until further order of the Commission. N.C. Gen. Stat. § 97-29.
4. Pursuant to N.C. Gen. Stat. § 97-57 where an occupational disease is compensable "the employer in whose employment the employee was last injuriously exposed to the hazards of such disease, and the insurance carrier, if any, which was on the risk when the employee was last exposed under such employer, shall be liable". Last injurious exposure is defined as an exposure that proximately augmented the disease to any extent, however slight. Rutledge v. Tultex Corp./Kings Yarn,308 N.C. 85, 88, 301 S. E.2d 359, 362(1985)(citing Haynes v. FeldsparProducing Co., 222 N.C. 163, 166, 169,22 S. E. 2d 275, 277,278 (1942)); See also Caulder v. Waverly Mills, 314 N.C. 70,331 S. E.2d 646 (1985). The greater weight of the evidence supports that plaintiff's last injurious exposure to the conditions of his job with defendant that caused or augmented his occupational disease was after April 1, 2005 when Hartford Insurance Company came on the risk for defendant. N.C. Gen. Stat. §97-57. Therefore, Hartford Insurance is liable for plaintiff's right carpel tunnel syndrome and right ulnar nerve neuropathy and entrapment as plaintiff continued to be injuriously exposed after April 1, 2005. N.C. Gen. Stat. § 97-57.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to plaintiff's counsel's fee, defendants shall pay plaintiff temporary total disability compensation at the rate of $399.85 per week, for the period August 8, 2005 through *Page 7 
November 1, 2005, and beginning January 10, 2007 and continuing until further order of the Commission or when plaintiff returns to suitable employment.
2. An attorney's fee for plaintiff's counsel for 25% of the above compensation, including continuing compensation, is approved, and shall be paid directly by defendants to plaintiff's attorney.
3. Defendants Hartford shall pay all medical expenses beginning April 1, 2005 incurred or to be incurred by plaintiff as a result of his compensable occupational disease, for so long as such examinations, evaluations and treatments may reasonably be required to effect a cure, or give relief or may tend to lessen plaintiff's period of disability, when bills for same have been submitted to and approved by the Industrial Commission. This shall include treatment ordered or performed by Dr. Kathryn Caulfield and Dr. Scott McCloskey.
4. In the event that the portion of this Opinion and Award which finds Hartford Insurance the carrier on the risk is appealed to the North Carolina Court of Appeals, Hartford Insurance is ordered pursuant to N.C. Gen. Stat. § 97-86.1 to comply with all portions of this Opinion and Award. Hartford Insurance shall be reimbursed by St. Paul-Travelers Insurance/Charter Oaks Fire Insurance Company if St. Paul-Travelers Insurance/Charter Oaks Fire Insurance Company is ultimately held liable.
5. Defendants Hartford Insurance and St. Paul-Travelers Insurance Company/Charter Oak Fire Insurance Company shall split the costs due to the Commission.
This the 14th day of January, 2008.
 S/______________________
 BUCK LATTIMORE
 COMMISSIONER *Page 8 
CONCURRING:
 S/______________________ DIANNE C. SELLERS COMMISSIONER
 S/______________________ CHRISTOPHER SCOTT COMMISSIONER
 *Page 1