***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties. The appealing party has not shown good ground to receive further evidence or rehear the parties or their representatives. Upon reconsideration of the evidence, the Full Commission affirms the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are subject to and bound by the North Carolina Workers' *Page 2 
Compensation Act.
2. At all relevant times hereto, an employment relationship existed between plaintiff and the named defendant-employers.
3. Selective Insurance Company is the proper insurance carrier for defendant-employer R.A.G.S., Inc./Selective HR Solutions.
4. Key Risk Insurance Company is the proper insurance carrier for defendant-employer K W Cafeteria.
5. Plaintiff's average weekly wage and compensation rate for defendant-employer R.A.G.S. are $348.13 and $232.08, respectively.
6. Plaintiff was employed by defendant-employer R.A.G.S. from February 1996 until October 4, 2004.
7. Plaintiff was employed by defendant-employer K W Cafeteria from January 15, 2005 through February 13, 2005.
8. On or about December 3, 2003, plaintiff suffered compensable occupational injuries to her wrists, which arose out of and in the course of her employment with defendant-employer R.A.G.S.
9. Defendant-employer R.A.G.S. paid plaintiff temporary total disability compensation from December 3, 2003 through February 4, 2004.
10. Plaintiff returned to work for defendant-employer R.A.G.S. on January 5, 2004.
11. Plaintiff drew three (3) unemployment checks in November 2004 in the amount of $181.00. Further, she received a lump-sum unemployment check in the amount of $608.00 on January 1, 2005. She drew two (2) more unemployment checks in the amount of $152.00 and one final check in the amount of $97.00. *Page 3 
12. The parties stipulated into evidence the following exhibits and medical records:
 (a) Industrial Commission forms;
 (b) Medical Records from the following providers:
 a. Rowan Regional Medical Center;
 b. RoMedical Center;
 c. OrthoCarolina/Charlotte Orthopedic Associates;
 d. Centralina Orthopaedic Sports Medicine; and
 e. Salisbury Orthopaedic Associates.
 (c) All of plaintiff's Responses to defendant-employer R.A.G.S.'s First Set of Interrogatories and Request for Production of Documents;
 (d) All of plaintiff's Responses to defendant-employer K W Cafeteria's, First Set of Interrogatories and Request for Production of Documents;
 (e) All of plaintiff's Responses to defendant-employer R.A.G.S's., Second Set of Interrogatories;
 (f) Copies of plaintiff's check stubs from defendant-employer K W Cafeteria;
 (g) Copies of plaintiff's check stubs from Selective Insurance Company;
 (h) Schedule A showing plaintiff's paid and unpaid medical expenses related to her injury.
13. Issues to be determined include:
 • Whether plaintiff's bilateral wrist injuries were significantly aggravated by her brief employment with defendant-employer K W Cafeteria or whether this employment constituted an unsuccessful trial return to work? *Page 4 
 • Whether plaintiff is entitled to any additional periods of total disability compensation?
 ***********
Based upon the competent evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was fifty-four years of age. She had completed the eleventh grade in high school and did not obtain a high school equivalency certificate. Prior to going to work for defendant-employer R.A.G.S. in February 1996, plaintiff worked in another sewing plant for two years, at a furniture plant for eleven and one-half years and a textile plant for eight years. She has no clerical experience.
2. Plaintiff worked as a sewer for defendant-employer R.A.G.S. Plaintiff's job required her to sew clothing on a machine and pick up heavy bundles of clothing from the table beside her. Plaintiff spent approximately 80 to 85% of her time sewing and the rest of the time handling bundles. After she sewed all the pieces in a bundle, she would tie up everything and put it in a bin. It was a production job, for which plaintiff was paid based on the number of pieces completed. Plaintiff used her hands continually and repetitively during her eight to nine hour shift.
3. Plaintiff first starting having problems with her hands and wrists in August 2003. At that time, she presented to RoMedical Center, complaining of left wrist pain, which she related to lifting bundles at work. She was diagnosed with wrist strain, provided medication, and advised to use a wrist splint while working. She continued to be seen at RoMedical Center in September and October 2003, with continued complaints. Plaintiff was given work restrictions to limit the use of her left hand, and given a wrist splint. She continued to work for defendant-employer *Page 5 
R.A.G.S. under these restrictions.
4. Due to plaintiff's ongoing complaints of left wrist pain, she presented to Dr. William Mason with Centralina Orthopaedic and Sports Medicine in October 2003. At her first visit on October 7, 2003, Dr. Mason suspected a possible fracture, and he ordered an MRI of the left wrist. Plaintiff returned to see Dr. Mason on October 14, 2003, at which time he noted the MRI showed "signal disruption of the dorsal aspect of the scapular ligament." At her November 18, 2003 visit, Dr. Mason diagnosed tendonitis. Dr. Mason allowed plaintiff to work light duty, using a wrist splint and with no lifting of heavy bundles.
5. On December 4, 2003, Dr. Hugh Boyd Watts of RoMedical Care Inc. in Salisbury examined Plaintiff. Dr. Watts initially diagnosed her with a benign cyst on her right wrist. At a follow-up visit on December 17, 2003, Dr. Watts' notes clarify that he was assessing plaintiff's left wrist as a "second opinion." Noting that plaintiff was having problems with both wrists, Dr. Watts sent her for a bone scan, and gave her 80 mg of Kenalog in an injection. When the bone scan returned negative, Dr. Watts decided to return plaintiff to work and "see what happens." Dr. Watts wanted plaintiff to continue wearing the splints, but was unsure whether she could return to work in a knitting factory wearing splints on both arms. Dr. Watts continued to treat plaintiff for her bilateral wrist pain with Kenalog injections throughout most of 2004.
6. As a result of her bilateral wrist condition, plaintiff was unable to work from December 3, 2003 until she returned to work on January 5, 2004. Defendant-employer R.A.G.S. and its insurance carrier, Selective Insurance Company, accepted plaintiff's claim for occupational disease affecting both wrists and paid plaintiff temporary total disability compensation from December 3, 2003 through February 4, 2004. The claim was accepted as a compensable occupational disease on the basis of plaintiff's diagnosis and treatment for *Page 6 
tendonitis of the extensor carpi ulnaris (ECU) tendon. The cause of plaintiff's ECU tendonitis was lifting heavy bundles and the repetitive activities of her sewing duties with defendant-employer R.A.G.S.
7. Plaintiff continued to work for defendant-employer R.A.G.S. under her restrictions between January and October 2004. She was not working full time because the plant was preparing to close. Although plaintiff began to earn less than her pre-injury average weekly wage in approximately May 2004, it was because she was working reduced hours related to the plant closing. The evidence of record failed to show that plaintiff's reduced earnings were due to her occupational injuries to her wrists.
8. Plaintiff was laid off from defendant-employer R.A.G.S. on October 5, 2004, and then drew unemployment benefits for a brief period of time. After she was laid off from defendant-employer R.A.G.S., plaintiff tried to avoid applying for any jobs that would require her to do repetitive work.
9. Plaintiff was examined by Dr. John Gaul, an orthopedic specialist, on October 12, 2004, after she stopped working at the plant of defendant-employer R.A.G.S. Dr. Gaul initially diagnosed plaintiff with ECU tendonitis and gave her a Cortisone injection in her left wrist. He restricted her to light duty work only. Plaintiff again presented to Dr. Gaul on November 19, 2004, when she was having symptoms in her right wrist as well as her left wrist. Plaintiff reported that the cortisone injection did not improve her left wrist. Dr. Gaul did not recommend any surgery or further injections at that time and released plaintiff with a four percent impairment rating (4% PPD) to her left hand and a zero rating (0%) to her right hand. Dr. Gaul also restricted her from continuous lifting of more than five pounds and to avoid sustained repetitive activities, such as working on an assembly line. *Page 7 
10. Plaintiff applied for a position and was hired as a line server at defendant K W Cafeteria in January 2005. She began working around January 14, 2005, and worked a total of about nine days, before she quit. Plaintiff's primary job duty was to serve food. She served a variety of foods, from meat and vegetables to salads. She held the plate in her left hand and served the food with her right hand, then handed the plate to the customer. The weight of the plates varied depending upon how much food was on it. She also stirred the food to keep it warm and fresh. Plaintiff typically worked from 10:30 a.m. to 8:30 p.m. She would serve food until approximately 2:30 p.m. when the restaurant would close until it reopened around 4:00 p.m. Plaintiff would be responsible for wiping down the salad counter or food service area where she was working, during the 2:30 to 4:00 pm break.
11. Kevin Snyder was general manager of defendant K W where plaintiff worked briefly. According to his testimony, when he observed plaintiff while she was working the salad line, the heaviest lifting she would do occasionally would be 3 to 5 pounds when replenishing items on the serving bar. About thirty-five percent of the salads such as congealed salads or coleslaw are self-service, so the customers assist themselves. Defendant-employer K W Cafeteria serves 1,000 to 1,100 customers per day.
12. On February 2, 2005, plaintiff saw Dr. Michael Lauffenburger at Salisbury Orthopaedic Associates, P.A. for a second opinion on her treatment and ratings to her wrists. At this time, she was still employed by defendant-employer K W Cafeteria. Plaintiff reported to Dr. Lauffenburger that she was working at defendant-employer K W as a line server, but was having trouble because her job involved repetitive use of the hands and lifting which caused her pain. *Page 8 
13. Dr. Lauffenburger diagnosed plaintiff with chronic overuse tendonitis of the ECU tendon bilaterally and restricted her from any job that required repetitive use of the hands or any kind of lifting or gripping. Dr. Lauffenburger opined plaintiff would need to look for a sedentary job involving paperwork only. Based upon her weak grip strength, Dr. Lauffenburger assessed plaintiff with permanent impairment ratings of eight percent (8% PPD) bilaterally. He also recommended nerve conduction studies, which were not performed until October 2005.
14. Following the evaluation by Dr. Lauffenburger, plaintiff resigned from her job at defendant-employer K W on or about February 13, 2005. She returned to see Dr. Gaul on August 22, 2005, almost six months later, with complaints of swelling and soreness with pain and weakness in both hands and wrists. Dr. Gaul concurred with Dr. Lauffenburger's impairment ratings and recommendation for nerve conduction studies.
15. Plaintiff was seen for a final time by Dr. Gaul on October 20, 2005, after the nerve conduction studies were performed. Dr. Gaul reported that plaintiff did have some evidence of carpal tunnel syndrome on both sides and some evidence of ulnar nerve compression in the right wrist. Further, she had evidence of tendonitis and arthritis by clinical examination. Based on the examination, nerve conduction studies and her overall situation, Dr. Gaul increased plaintiff's impairment ratings to her hands to ten percent (10% PPD) each. Dr. Gaul also placed plaintiff on work restrictions of no lifting more than 2 pounds, if she were performing repetitive work and occasional lifting up to 5 pounds with either hand, if it occurred less than one third of the time. He did not recommend any surgery.
16. Plaintiff presented to Dr. Lauffenburger for a final time on January 18, 2006, after the nerve studies were performed. The studies revealed mild carpal tunnel syndrome bilaterally. Plaintiff reported to Dr. Lauffenburger that she had very poor grip strength and did not think she *Page 9 
would be able to go back to any type of employment. Dr. Lauffenburger agreed that no surgical intervention was recommended. He concurred with the ten percent impairment rating (10% PPD) to each hand given by Dr. Gaul.
17. After careful consideration of the testimony of both Dr. Laffenburger and Dr. Gaul, the greater weight of the evidence reveals that plaintiff's employment with defendant-employer K W Cafeteria temporarily aggravated the symptoms of her pre-existing bilateral wrist conditions. The job duties at defendant-employer K W would not place persons in general at an increased risk of developing a wrist injury such as carpal tunnel syndrome. Dr. Lauffenburger's testimony indicates that he could only ascribe a temporary increase in her symptoms, rather than a permanent aggravation, due to her employment at defendant-employer K W Cafeteria. The increased ratings by both physicians were made after further objective nerve conduction studies, which were not available when plaintiff had been previously rated.
18. At the hearing before the Deputy Commissioner, plaintiff testified that she suffers from burning sensations, pain and numbness in her hands and wrists. Numbness and tingling wake her up at night and her hands are stiff in the morning. She is unable to do household cleaning tasks such as vacuuming and general cleaning, which her husband now performs. She must use two hands to do tasks she previously performed with just one hand. Plaintiff is able to write, but not for long because it causes swelling and stiffness. Plaintiff has no clerical skills.
19. After leaving her employment with defendant-employer K W Cafeteria, plaintiff stayed out of work for a year in order to qualify for Social Security Disability benefits. When she was initially turned down for Social Security Disability, she began to apply for jobs. At the hearing before the Deputy Commissioner, plaintiff identified several job applications that she had completed after she left her employment with defendant-employer K W Cafeteria, *Page 10 
including fast food restaurant jobs and discount store jobs. Plaintiff applied for positions that she probably could not have done because of her restrictions. Plaintiff has not had a job interview or offer since leaving her employment with defendant-employer K W Cafeteria.
20. The greater weight of the evidence establishes, and the Full Commission finds, that plaintiff developed bilateral wrist injuries due to causes and conditions of her employment with defendant-employer R.A.G.S. Due to these injuries, plaintiff had an unsuccessful trial return to work with defendant-employer K W Cafeteria, after defendant-employer R.A.G.S.'s plant closed.
21. As a consequence of her wrist injuries, plaintiff has been unable to earn wages in any employment since the termination of her employment with defendant-employer R.A.G.S., with the exception of a brief but unsuccessful trial return to work with defendant-employer K W Cafeteria from January 15, 2005 through February 13, 2005.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an admittedly compensable occupational disease of bilateral tendonitis of the extensor carpi ulnaris (ECU) tendon, which arose out of and in the course of her employment with defendant-employer R.A.G.S. N.C. Gen. Stat. § 97-53(13).
2. The evidence fails to establish that plaintiff's job duties while employed for approximately nine days as a line server for defendant-employer K W Cafeteria significantly accelerated and aggravated her pre-existing occupational disease of tendonitis in both wrists. Rather, this constituted an unsuccessful trial return to work. N.C. Gen. Stat. §§ 97-32.1, 97-57; *Page 11 Caulder v. Mills, 314 N.C. 70, 331 S.E.2d 646 (1985).
3. In order to meet the burden of proving continuing disability, plaintiff must prove that she was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. ApexCabinet Co., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of production by producing one of the following: (1) medical evidence that she is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that she is capable of some work, but that she has, after a reasonable effort, been unsuccessful in her efforts to obtain employment; (3) evidence that she is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that she has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, 108 N.C. App. 762, 425 S.E.2d 454
(1993). In the present case, plaintiff has shown that she made reasonable efforts to return to work but due to her significant lifting restrictions, lack of education and lack of transferable job skills has been unsuccessful in obtaining employment.
4. When a plaintiff meets her burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra. Defendants have not carried this burden.
5. As a result of plaintiff's compensable bilateral wrist injuries, plaintiff has been unable to earn wages in any employment and has been totally disabled from the time she was laid off by defendant-employer R.A.G.S. on October 5, 2004 until January 15, 2005, when she *Page 12 
worked temporarily for defendant-employer K W Cafeteria and since leaving her employment with K W Cafeteria on February 13, 2005. Thus, plaintiff is entitled to temporary total disability compensation at the rate of $232.08 per week for these periods and on going until further Order of the Commission. N.C. Gen. Stat. § 97-29.
6. Defendant-employer R.A.G.S. and its carrier shall be responsible for payment of all medical expenses incurred by plaintiff to the extent the same is reasonably required to effect a cure, provide relief or lessen plaintiff's period of disability for her bilateral wrist injuries. N.C. Gen. Stat. §§ 97-2(19), 97-25.
7. Defendant is entitled to a credit for any unemployment compensation paid plaintiff. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing stipulations, findings of fact, and conclusions of law, the Full Commission enters the following:
 AWARD
1. Subject to an attorney's fee approved below, defendant-employer R.A.G.S. shall pay temporary total disability compensation to plaintiff in the amount of $232.08 per week from the time she was laid off by defendant-employer R.A.G.S. on October 5, 2004 until January 15, 2005, when she worked temporarily for defendant-employer K W Cafeteria and from February 13, 2005, when she left her employment with K W Cafeteria and continuing. The amount that has accrued shall be paid in a lump sum, subject to the attorney's fee.
2. Defendant-employer R.A.G.S. through its carrier is entitled to a credit for any unemployment compensation paid plaintiff. *Page 13 
3. Defendant-employer R.A.G.S. through its carrier shall be responsible for payment of all medical expenses incurred by plaintiff to the extent the same is reasonably required to effect a cure, provide relief or lessen plaintiff's period of disability for her bilateral wrist injuries.
4. A reasonable attorney's fee of twenty-five percent (25%) of the compensation due Plaintiff as total disability compensation awarded herein is approved for Plaintiff's counsel.
5. Defendant-employer R.A.G.S. and its carrier shall pay the costs of hearing.
This the ___ day of March 2008.
S/_______________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/_______________ BUCK LATTIMORE COMMISSIONER
 S/_______________ DANNY L. McDONALD COMMISSIONER *Page 1