DONNIE L. LASSITER, Plaintiff,
v.
TOWN OF SELMA, and N.C. LEAGUE OF MUNICIPALITIES, Defendants.
No. COA08-1148
Court of Appeals of North Carolina
Filed: July 7, 2009
This case not for publication
Lucas, Denning & Ellerbe, P.A., by Sarah E. Ellerbe, for employee-plaintiff-appellee.
Teague, Campbell, Dennis & Gorham, L.L.P., by Dayle A. Flammia and Sharon G. Seudder, for employer-carrier-defendant-appellants.
STEELMAN, Judge.
The record supports the Commission's finding that plaintiff contracted Lyme Disease based upon expert medical testimony. The record also supports the Commission's finding that the Lyme Disease was an occupational disease.

I. Factual and Procedural Background
In August 2005, Donnie L. Lassiter (plaintiff) was employed by the Town of Selma, working as a line crew leader at the Sysco site where a new plant was being constructed. His duties included supervising workers and installing power lines. The Sysco site was a grassy and wooded area, and plaintiff would find multiple ticks on himself daily.
On 17 August 2005, when plaintiff returned home from work, he and his wife removed a tick from his lower chest. Plaintiff's wife burned the tick with a match after it was removed. About a week later, plaintiff developed a red "bull's eye" lesion around the spot where the tick had been. On 24 August 2005, plaintiff left work and went to his family physician, Dr. Wallace R. Nelms (Dr. Nelms), because he was feeling weak and achy, with a fever and chills. Dr. Nelms tested plaintiff for Lyme Disease, which can be transmitted by certain types of ticks. The test came back equivocal, meaning neither positive nor negative, so Dr. Nelms proceeded to treat plaintiff for possible Lyme Disease. Dr. Nelms then referred plaintiff to Dr. Richard L. Rumley (Dr. Rumley), a board-certified physician in infectious diseases.
Dr. Rumley performed two Lyme serology tests on plaintiff: the first test came back with one reactive band on the reflex test to Lyme antigens, and the second test came back with five or six reactive bands on the reflex test to Lyme antigens. Over the course of several months, there were further tests for Lyme antibodies, which all came back negative. Plaintiff also tested positive for Bartonella, better known as cat scratch disease. Dr. Rumley testified that Bartonella can have similar symptoms as Lyme Disease. He testified plaintiff told him it was the 17 August 2005 tick bite which formed the red bull's eye lesion, and he agreed it was "more likely than not the tick bite that caused the bull's eye lesion is the one that carried the Lyme's disease and infected [plaintiff]." Plaintiff testified that he missed about five or six days of work plus doctor visits due to his illness, but he was still able to work full-time.
On 18 July 2006, plaintiff filed a worker's compensation claim seeking an award of compensation for Lyme Disease with the Industrial Commission (Commission). Defendants denied the claim.
On 23 June 2008, the Commission issued an Opinion and Award in which it held that plaintiff had suffered injury as a result of a compensable occupational disease and awarded plaintiff temporary total disability benefits for the periods of time plaintiff was disabled from work at the rate of $563.75 per week. Past, present and future medical expenses were also awarded.
Defendants appeal.

II. Standard of Review
"The standard of review on appeal to this Court from an award by the Commission is whether there is any competent evidence in the record to support the Commission's findings and whether those findings support the Commission's conclusions of law." Oliver v. Lane Co., 143 N.C. App. 167, 170, 544 S.E.2d 606, 608 (2001) (citing Lowe v. BE&K Construction Co., 121 N.C. App. 570, 573, 468 S.E.2d 396, 397 (1996)). The Commission's findings of fact are conclusive on appeal if supported by any competent evidence. "Thus, on appeal, this Court does not have the right to weigh the evidence and decide the issue on the basis of its weight. The court's duty goes no further than to determine whether the record contains any evidence tending to support the finding." Adams v. AVX Corp., 349 N.C. 676, 681, 509 S.E.2d 411, 414 (1998) (citations and quotations omitted).

III. Diagnosis of Lyme Disease
In their first argument, defendants contend that the Commission's Award is unsupported by competent evidence because Dr. Rumley's diagnosis of Lyme Disease was based upon mere speculation. We disagree.
Defendants contend that plaintiff's physicians never made a definitive diagnosis of Lyme Disease related to the alleged occupational exposure. Defendants further argue no medical opinion was offered that to a reasonable degree of medical certainty plaintiff developed Lyme Disease.
As to the expert medical testimony, the Commission found:
8. On August 24, 2005, plaintiff presented to his family physician, Dr. Nelms, with symptoms of feeling weak, frontal headaches, and fever and chills. Dr. Nelms' medical record indicated a possible exposure to Lyme or Rocky Mountain Spotted Fever. Dr. Nelms proceeded with medical treatment for possible Lyme's disease.
9. Dr. Nelms referred plaintiff to Dr. Richard Rumley of Carolina Infectious Disease in Greenville, North Carolina. Dr. Rumley testified that plaintiff had Lyme's Diseases during the time he treated plaintiff and that plaintiff developed a lesion or "bull's eye" as a result of a tick bite, which is consistent with Lyme's Disease. Dr. Rumley's deposition was taken on May 9, 2007, during which he stated that in his opinion it was the August 17, 2005 tick bite that caused the bull's eye that most likely infected plaintiff with a Lyme's Disease. During this time, plaintiff did not suffer from any other health concerns.
"The Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. The courts may set aside findings of fact only upon the ground they lack evidentiary support." Anderson v. Lincoln Construction Co., 265 N.C. 431, 433-34, 144 S.E.2d 272, 274 (1965) (citations omitted). However, the Commission's findings of fact may be set aside on appeal when there is a complete lack of competent evidence to support them. Young v. Hickory Bus. Furn., 353 N.C. 227, 230, 538 S.E.2d 912, 914 (2000)(citing Saunders v. Edenton Ob/Gyn Ctr., 352 N.C. 136, 140, 530 S.E.2d 62, 65 (2000)). The Commission's findings of fact regarding whether plaintiff contracted Lyme Disease is based solely upon the expert medical testimony. Therefore, our decision in this case depends upon the competency of their medical testimony.
"[W]here the exact nature and probable genesis of a particular type of injury involves complicated medical questions far removed from the ordinary experience and knowledge of laymen, only an expert can give competent opinion evidence as to the cause of the injury." Click v. Freight Carriers, 300 N.C. 164, 167, 265 S.E.2d 389, 391 (1980).
Dr. Nelms testified that while plaintiff had many of the symptoms for Lyme, he did not know whether plaintiff had Lyme Disease. He referred plaintiff to Dr. Rumley because "I didn't know what in the devil we were treating." This issue thus depends entirely upon Dr. Rumley's testimony.
In formulating his opinion, Dr. Rumley considered plaintiff's description of the symptoms as well as two separate Lyme serology tests: IgG and IgM, which measure the antibodies a person's body manufactures to protect itself from Lyme infections. IgG and IgM are two different antibodies the body produces; the IgG antibodies show up within a week after an initial infection or immunization, and IgM antibodies usually can be detected within a month. While Dr. Rumley testified that one of the serology tests (IgG) at one point was positive, his medical notes indicated that the IgG test was always negative. Dr. Rumley further testified his notes were incorrect, and that one of the Lyme serology tests came back with one positive reactive band, and at a later date, the same test had five or six positive reactive bands. One of his medical notes, date of visit 30 November 2005, indicates that the IgM test was reactive. When asked, to a reasonable degree of medical certainty, whether it was his opinion plaintiff had Lyme Disease, Dr. Rumley said yes. He testified that it was more likely than not plaintiff had Lyme Disease based on the fact that plaintiff had a tick bite, a bull's eye lesion, classic symptoms, and the positive Lyme serology tests.
We note Dr. Rumley's testimony contains conflicts between the direct and cross-examination portions of his testimony. However, such conflicts are for the Commission to resolve in its role as the fact-finder in these cases. So long as there is competent evidence in the record to support its findings, they are binding upon the appellate courts. Young, 353 N.C. at 230, 538 S.E.2d at 914.
We hold that the Commission's findings of fact are supported by competent evidence in the record, and are, therefore, binding on appeal. The record contains the medical test results showing the Lyme serology test with the one positive reactive band; however, it does not contain the medical test results showing the Lyme serology test with the five or six positive reactive bands to which Dr. Rumley testified. Defendants have the responsibility to make certain the record on appeal is complete. State v. Alston, 307 N.C. 321, 341, 298 S.E.2d 631, 644 (1983). Because we cannot review the actual test results, we must presume that Dr. Rumley's testimony is correct.
Medical diagnoses are best left to medical experts, and defendants have provided no contradictory testimony. See Click, 300 N.C. at 167, 265 S.E.2d at 391. Defendants point to the several negative Lyme tests contained in the record, and to the fact plaintiff was also diagnosed with Bartonella, which has similar symptoms to Lyme Disease. Finding of fact number nine states that plaintiff did not suffer from any other health concerns other than Lyme Disease. However, Dr. Rumley testified that plaintiff did have Bartonella. Dr. Rumley also testified that it was his medical opinion plaintiff suffered from Lyme Disease. "The findings of fact of the Industrial Commission are conclusive on appeal when supported by competent evidence, even though there be evidence that would support findings to the contrary." Jones v. Myrtle Desk Co., 264 N.C. 401, 402, 141 S.E.2d 632, 633 (1965). Dr. Rumley gave a conclusive diagnosis of Lyme Disease. While a portion of finding of fact number nine is incorrect, it does not affect the finding that plaintiff had Lyme Disease.
This argument is without merit.

IV. Compensable Occupational Disease
In their second argument, defendants contend plaintiff failed to produce competent evidence that he had an occupational disease which was causally related to his employment. We disagree.
Our Supreme Court has set forth three elements plaintiff must prove to establish the existence of an occupational disease under N.C. Gen. Stat. § 97-53(13):
(1) characteristic of persons engaged in the particular trade or occupation in which the claimant is engaged;
(2) not an ordinary disease of life to which the public generally is equally exposed with those engaged in that particular trade or occupation; and
(3) there must be a causal connection between the disease and the claimant's employment.
Rutledge v. Tultex Corp., 308 N.C. 85, 93, 301 S.E.2d 359, 365 (1983) (citations and quotations omitted). Defendants argue plaintiff has failed to establish that line crew leaders have any greater risk than the general public of being bitten by ticks or of being exposed to Lyme Disease. For plaintiff to satisfy the first and second elements, he does not need to prove that his disease originates exclusively from or be unique to his particular trade or occupation.
"All ordinary diseases of life are not excluded from the statute's coverage. Only such ordinary diseases of life to which the general public is exposed equally with workers in the particular trade or occupation are excluded." Id. (citing Booker v. Duke Medical Center, 297 N.C. 458, 472-75, 256 S.E.2d 189, 1982-00 (1979)). The first two elements are satisfied if the employment exposed the plaintiff to a greater risk of contracting the disease than the general public. "`The greater risk in such cases provides the nexus between the disease and the employment which makes them an appropriate subject for workmen's compensation.'" Id. at 94, 301 S.E.2d at 365 (quoting Booker, 297 N.C. at 475, 256 S.E.2d at 200). In this case, the Commission found:
3. While performing work at the Sysco site, plaintiff and his co-workers were experiencing unusual amounts of tick bites, finding numerous ticks on themselves every day, and reported spraying insecticides in an attempt to control the problem because the problem with ticks was so bad. Donald Baker, the Superintendent for the Town of Selma stated that while at the Sysco site, the workers would constantly get ticks off of themselves. Mr. Baker testified that the workers got more ticks on them at the Sysco site than when they worked at other areas. One of plaintiff's co-workers, Harvey Hooks, testified that ticks would be on their clothes and embedded in their skin and that he had as many as ten to fifteen ticks on him in one day while at the Sysco site. Some days plaintiff would find five or six ticks and some days ten ticks on himself.
. . .
5. The amount of ticks and the resultant risk of tick bites were greater for plaintiff as a result of his employment with defendant than that experienced by the general public. By working in those particular areas around the Sysco site, plaintiff was at an increased risk of being bitten by a tick.
We find competent, specific, and credible evidence in the record to support these findings. Plaintiff's co-workers testified to the increased number of ticks they were finding on themselves at the Sysco site, which they did not find at other job sites. Plaintiff also testified that he and his wife discovered the 17 August 2005 tick after he came home from work at the Sysco site. This evidence supports the finding, "By working in those particular areas around the Sysco site, plaintiff was at an increased risk of being bitten by a tick."
Defendants also contend that plaintiff failed to produce any competent evidence that there was a causal connection between his medical condition and his employment, arguing that causation can only be proven by physician testimony which states the disease more likely than not arose from a specific, infected tick. Kashino v. Carolina Veterinary Specialists, 186 N.C. App. 418, 650 S.E.2d 839 (2007). In Kashino, the Industrial Commission held that while plaintiff had presented sufficient expert testimony to support a finding of increased risk arising from her employment, she failed to prove a causal relationship between her employment and Lyme Disease. Id. at 421, 650 S.E.2d at 841. This Court described the testimony of plaintiff's expert witness as "at best equivocal[,]" Id. at 422, 650 S.E.2d at 842, and held that the evidence in the record supported the Commission's finding "that plaintiff has failed to prove that there is a causal connection between plaintiff's Lyme disease and her employment." Id. at 423, 650 S.E.2d at 842. Applying the appropriate standard of review, this Court affirmed the Commission.
The facts in Kashino differ sharply from those in the instant case. In Kashino, plaintiff found two ticks on her shoulder on 15 February 2001 after being exposed at work to a tick and flea-infected dog named "Scooby Doo." Symptoms were first manifested over a year later. In 2003, two years after the ticks were found, plaintiff began missing substantial time at work. The diagnosis of Lyme Disease was made in 2004, over three years later. There is no mention of a rash, or bull's eye lesion, in the area of plaintiff's shoulder in Kashino.
In the instant case, a bull's eye lesion developed at the site of the tick bite within a week. Symptoms also developed within a week. A conclusive diagnosis of Lyme Disease was made within four months. Plaintiff testified that the 17 August 2005 tick bite caused him to develop the bull's eye lesion. Dr. Rumley testified plaintiff's bull's eye lesion is "classified as, looks like and has been used to help diagnose Lyme infection." Dr. Rumley testified: (1) plaintiff had exposure to the tick; (2) plaintiff developed the bull's eye lesion; (3) plaintiff developed symptoms of Lyme Disease; and (4) plaintiff had positive lab tests that "became more evident that he had been exposed, or infected with a Lyme organism." It was the combination of all of these factors which formed the basis of Dr. Rumley's opinion that plaintiff had Lyme Disease. These four factors all occurred within four months of the 17 August 2005 tick bite, making the instant case very different from Kashino.
Our Supreme Court has stated that in occupational disease cases, "proof of a causal connection between the disease and the employee's occupation must of necessity be based on circumstantial evidence." Booker, 297 N.C. at 476, 256 S.E.2d at 200. Three circumstances which may be considered are: (1) the extent of exposure to the disease or disease-causing agents during employment; (2) the extent of exposure outside employment; and (3) absence of the disease prior to the work-related exposure as shown by the employee's medical history. Id. (citations omitted). Evidence of each of the foregoing is present in the record: plaintiff testified he found multiple ticks on himself daily at the Sysco site; his co-workers testified the amount of ticks at the Sysco site was greater than at any other work site; his co-workers further testified that shortly after plaintiff developed the red bull's eye lesion, his stamina and work performance declined; plaintiff's medical history in the record contains no evidence of Lyme Disease prior to the 17 August 2005 tick bite; Dr. Rumley testified the bull's eye lesion is a classic symptom of Lyme Disease; and Dr. Nelms testified in his deposition that Lyme Disease is transmitted by certain types of ticks.
Plaintiff testified that the only tick that bit him and was attached to his body was the one that left the bull's eye lesion. This was confirmed by plaintiff's wife. Plaintiff further testified that he treated his dogs with "Frontline," a medicine designed to keep fleas and ticks off of pets, and he never found fleas or ticks on either dog.
The foregoing evidence sufficiently excludes the possibility that plaintiff contracted Lyme Disease outside of his employment and is competent to support the Commission's findings of fact. These findings are sufficient to support the Commission's conclusion that plaintiff's disease was caused by his employment.
This argument is without merit.

V. Proof of Disability
In their third argument, defendants contend that plaintiff has failed to prove any disability because no evidence supported any diminution in plaintiff's wage earning capacity. We disagree.
We first note that defendants failed to raise this issue before the Commission; however, the Commission did make findings of fact and conclusions of law on plaintiff's disability.
"The term `disability' means incapacity because of injury to earn the wages which the employee was receiving at the time of injury in the same or any other employment." N.C. Gen. Stat. § 972-(9) (2007). Our Supreme Court has stated that in order to find a disability, the Commission must find:
(1) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in the same employment,
(2) that plaintiff was incapable after his injury of earning the same wages he had earned before his injury in any other employment, and
(3) that this individual's incapacity to earn was caused by plaintiff's injury.
Hilliard v. Apex Cabinet Co., 305 N.C. 593, 595, 290 S.E.2d 682, 683 (1982) (citations omitted).
The Commission found as fact:
7. On August 24, 2005, plaintiff was feeling so bad physically that he had to leave work for the first time in over twenty years. Plaintiff was a very hard-working dedicated employee of twenty-two years and had rarely taken time from work for illness-related absences.
. . .
10. Plaintiff testified that he missed five or six days from work, not including hours he took to attend doctor visits.
The Commission concluded that:
4. Plaintiff is entitled to the payment of the medical expenses incurred for the treatment of the injuries sustained, and any further treatment that tends to cure, give relief, or lessen plaintiff's period of disability. N.C. Gen. Stat. § 97-25.
. . .
6. Subject to an attorney's fee, plaintiff is entitled to the payment of temporary total disability payments at the compensation rate of $563.75 per week, during the periods of time plaintiff was disabled from work as a result of his occupational disease. N.C. Gen. Stat. § 97-29.
"An occupational disease does not become compensable under N.C.G.S. §§ 97-29 (total incapacity) or 97-30 (partial incapacity) until it causes incapacity for work." Caulder v. Waverly Mills, 314 N.C. 70, 75, 331 S.E.2d 646, 649 (1985). Based upon competent evidence from plaintiff's testimony, co-workers' testimony, and physician notes, the Commission found that after the 17 August 2005 tick bite, plaintiff's health declined, and he missed about a week from work because of his illness. The Commission did not err when it concluded that plaintiff had proven his disability.
We note that N.C. Gen. Stat. § 97-28 provides that no compensation, as defined in N.C. Gen. Stat. § 97-2(11), shall be allowed for the first seven calendar days of disability resulting from an injury, except the medical treatment and supplies benefits provided for in N.C. Gen. Stat. § 97-25. N.C. Gen. Stat. § 97-28 (2008). It is not clear whether the Commission considered this provision in making its award. Clearly the award of medical expenses directly related to Lyme Disease was proper. The record contains some medical notes about plaintiff's back problems, but the Commission did not link the Lyme Disease to plaintiff's back problems. Plaintiff is entitled to recover only the medical expenses directly related to his Lyme Disease.

VI. Conclusion
We hold the Commission's findings that plaintiff contracted Lyme Disease are supported by competent evidence and are binding on appeal. We further hold the findings are sufficient to sustain the Commission's conclusion that plaintiff's disease was caused by his employment. The award of medical expenses is proper but only as to medical expenses directly related to Lyme Disease.
AFFIRMED.
Judges BRYANT and ELMORE concur.
Report per Rule 30(e).